## Finnerty v. Burnham, Appellant.

*Negligence—Master and servant—Defective chain—Death.*

It is the duty of a master to use reasonable care to furnish his employees with a reasonably safe place of work and with reasonably safe machinery and appliances. The master's duty in this regard does not end here, but is a continuing one. The law imposes on him the further obligation of using reasonable care to keep such place of work and such instrumentalities in a reasonably safe condition, and this is to be accomplished by a proper and timely inspection for defects and the repair thereof.

In an action for the death of plaintiff's husband, an employee of the defendants, the case is for the jury, and a verdict for plaintiff will be sustained where the evidence tends to show that the deceased was killed by the breaking of a chain, that the chain was of an unusually large and special kind, that it was defective when bought, and that the defect was of such a character that it could have been discovered by the inspection of an expert.

Where the defect through which an injury occurs is in the original construction of the appliance or instrumentality, notice thereof to the master is unnecessary. In case of structural defects knowledge thereof by the master will be inferred.

Where a chain is used as an attachment to a crane for the purpose of lifting very heavy weights, the same rule that imposes upon the employer the duty of supplying a reasonably safe and suitable crane requires him to furnish a chain of like character.

| | |
|---|---|
| 205 | 305 |
| e210 | 1 65 |
| 27 SC | 1519 |
| 205 | 305 |
| 28 SC | 1103 |
| 205 | 305 |
| f219 | 3148 |
| p 34 SC | 477 |
| 205 | 305 |
| 220 | 3219 |
| 205 | 305 |
| 223 | 1450 |

Argued Jan. 16, 1903. Appeal, No. 212, Jan. T., 1902, by defendants, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1901, No. 1720, on verdict for plaintiff in case of Mary Finnerty v. George Burnham, William P. Henszey, John H. Converse, William L. Austin, Samuel M. Vauclain, Alba B. Johnson and George Burnham, Jr., trading as Burnham, Williams & Company. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before RALSTON, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $10,000. Defendants appealed.

*Error assigned* was in submitting the case to the jury.

*Frank P. Prichard,* with him *John G. Johnson,* for appellant. —The evidence was insufficient to show negligence on the part of the defendants: Kinney v. Corbin, 132 Pa. 341; Ehni v. National Tube Works Co., 203 Pa. 186; Bemisch v. Roberts, 143 Pa. 1; Prescott v. Ball Engine Co., 176 Pa. 459; Dyer v. Pittsburg Bridge Co., 198 Pa. 182; Cregan v. Marston, 126 N. Y. 568 (27 N. E. Repr. 952); Wachsmuth v. Shaw Electric Crane Co., 118 Mich. 275 (76 N. W. Repr. 497); Titus v. Bradford, etc., R. R. Co., 136 Pa. 618; Leonard v. Herrmann, 195 Pa. 222; Kilbride v. Carbon Dioxide, etc., Co., 201 Pa. 552; Dooner v. Delaware & Hudson Canal Company, 171 Pa. 581, 602; Keenan v. Waters, 181 Pa. 247; Service v. Shoneman, 196 Pa. 63, 66.

*John M. Vanderslice,* with him *Clarence Vanderslice,* for appellee.—The case was for the jury: Ross v. Walker, 139 Pa. 42; Bennett v. Standard Plate Glass Co., 158 Pa. 120; Honifius v. Chambersburg Engineering Co., 196 Pa. 47; Dyer v. Pittsburg Bridge Co., 198 Pa. 182; Bannon v. Lutz, 158 Pa. 166; Reese v. Clark, 198 Pa. 312.

OPINION BY MR. JUSTICE MESTREZAT, April 20, 1903:

The plaintiff is the widow of John Finnerty who was killed September 24, 1901, while in the service of the defendants at their locomotive works in the city of Philadelphia. He was a laborer, and on the day of the accident he and three other employees were engaged in hoisting a heavy article known as a "taper waist," for the purpose of placing it on a wagon. The work was done with a crane and a chain which had a ring in the middle and a hook at each end, and which was suspended from a hook on the arm of the crane. The hooks on the chain were fastened to the object to be raised. When the waist had been lifted to the required height and was almost on the wagon, the chain broke and the waist fell on Finnerty and killed him. The plaintiff alleges as the basis of this action that the defendants negligently furnished a chain of insufficient strength to safely lift the heavy object which the deceased and his fellow workmen were required to place on the wagon. The trial judge submitted the case to the jury and instructed them that in order to hold the defendants responsible, the plaintiff must show that

the chain "was defective when it was supplied; and further, that the defect was apparent when it was supplied." The question thus submitted to the jury was determined in favor of the plaintiff and the defendants have appealed. Their contention here is that they are relieved from liability for the death of Finnerty because it appears from the evidence that they "had purchased the chain of one of the most reputable manufacturers, had put it in stock in their shop, had furnished other tools of a similar kind so that the employee could select the one he desired, and had given general instructions to report and have repaired any defects."

The duty of the master to furnish, maintain and inspect appliances and instrumentalities used by his employees is thus stated in 20 Am. & Eng. Ency. of Law (2d ed.), 38, citing numerous authorities, including some of our own decisions, to sustain the text: "It is the duty of the master to use reasonable care to furnish his employees with a reasonably safe place of work and with reasonably safe machinery and appliances. The master's duty in this regard does not end here, but is a continuing one. The law imposes on him the further obligation of using reasonable care to keep such place of work and such instrumentalities in a reasonably safe condition, and this, of course, is to be accomplished by a proper and timely inspection for defects, and the repair thereof." And on page 93 of the same work it is said: "Where the defect through which the injury occurs is in the original construction of the appliance or instrumentality, notice thereof to the master is unnecessary. In case of structural defects, knowledge thereof by the master will be inferred. This doctrine is no more than the application of the general rule that it is the master's duty to exercise ordinary care in providing tools, machinery and appliances that are reasonably safe."

By the verdict of the jury it has been settled that the chain, the breaking of which caused the death of Finnerty, was defective in its original construction and that the defect was apparent when it was purchased by the defendants. It is necessarily conceded by the defendants that this finding as to fixed machinery would impose on them responsibility for the accident, but it is contended that the chain in question was a portable tool and that "as to tools which are portable, which are kept in

stock, as to which the employee can use or not use any particular one, and which he naturally handles and sees every day, the rule is that the employer may rely upon his inspection, and it would be impracticable to carry on any manufactory under any other rule." But we do not agree with the defendants that they were relieved from the duty to furnish or maintain a reasonably safe chain with which the employee was to perform his work; nor that the employee assumed the risks of the defects in the chain which his inspection would not discover. That the defendants neither supplied nor maintained a reasonably safe chain is apparent from the evidence submitted to the jury and which amply justified the verdict. The chain was an instrumentality or tool necessary in the performance of the work assigned Finnerty and the other employees. While not attached, yet in the operation of the crane it was necessarily a part of it and without which the service of the employees could not have been performed. The same rule that imposes upon the defendants the duty of supplying a reasonably safe and suitable crane, therefore, required them to furnish a chain of like character. It was not a common tool or appliance with which every person of ordinary intelligence is presumed to be conversant. In such case the employer has a right to rely upon his employee to detect any defects and to protect himself against them. But here the great weight of the object to be placed upon the wagon required a chain of exceptional size and strength, exempt from structural defects. As the evidence disclosed, it required an inspection by a person having technical knowledge to discover the insufficiency of, or defects in, the chain. It was not necessary and could not be presumed that the employee should have such knowledge to enable him to perform the duties of his employment. It was, therefore, not expected of him, and hence not his duty to make an inspection of the chain which would have resulted in no information to him. Common observation would not have availed him nor protected him from the defects in the chain, which the testimony showed, and the jury found, existed from its origin.

The learned counsel for defendants, we think, base their argument upon a misconception of the facts of the case. The chain was not one of several chains similar in kind and size kept for use on this crane. While there were small chains for

like work lying about the shop to be used as needed, this was the only chain in the shop of sufficient strength and size for moving objects of the weight of the " taper waist." It was near, or suspended from, the crane when the employees began their work, and it is therefore apparent that they were expected by their employers to use it when objects of a large size were to be moved. It is true, the defendants had another chain sufficient for the purpose but it was not, at the time, in this shop. The rule, therefore, sought to be enforced by the defendants, which relieves an employer from liability when he furnishes safe and suitable materials or tools from which the employee can make a selection, is not applicable here.

The evidence in the case conclusively establishes the fact that the chain was defective in material and construction, and therefore unfit for the services expected of it. It was constantly breaking and as constantly repaired. The foreman of the shop knew it had been broken, but there was no evidence that Finnerty knew the fact, or knew that the chain was insecure or unsafe. No inspection nor any other means were taken to protect employees against its inherent weakness and unfitness. It was clearly shown on the trial that an inspection by one skilled in iron work would have revealed its structural and other defects. With the knowledge of its defects disclosed by its frequently breaking, common prudence suggested an inspection of it which would have resulted in its repair or withdrawal from service, thus saving two human lives.

The judgment is affirmed.