## McKee v. Crucible Steel Company of America, Appellant.

*Negligence—Master and servant—Unsafe appliance.*

In an action against a steel company by an employee to recover damages for personal injuries, the case is for the jury, where it appears that the accident happened by reason of the absence of a bolt or rivet in the machinery, that the bolt or rivet had not been in its place for months, and that the defect in the machinery could not have been revealed to the plaintiff except by very special investigation.

In such a case questions put to witnesses, which admitted and invited answers that regarded absolute safety, should be ruled out, inasmuch as all that is required to exonerate an employer is that the machinery be reasonably safe; but if it appears that the defendant could not have been prejudiced by the answers in view of very careful instructions in the charge, the judgment will not be reversed.

Argued Oct. 24, 1905.    Appeal, No. 36, Oct. T., 1905, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct· Term, 1902, No. 433, on verdict for plaintiff in case of George McKee v. The Crucible Steel Company of America.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Trespass to recover damages for personal injuries.    Before FRAZIER, P. J.

At the trial plaintiff's counsel asked witnesses the following questions :

" Q. Mr. Guenther, if you had known there was no bolt here, or that it had been allowed to get out and had not been replaced, would you have regarded that as a safe place to work ?

Objected to by Mr. Castle as incompetent, irrelevant and immaterial, and not binding upon defendant in this matter.

Objection overruled and bill sealed. [2]

" Q. Mr. Baer, if you had known that this bolt, if it ever

had been put in, had gotten out, and that there was nothing supporting it except this hanger without any bolt, would you have regarded it as safe ?   A. I would have gotten it fixed.

Objected to by Mr. Castle : This is objected to as not the test of negligence.

Objection overruled and bill sealed. [3]

" Q. Well, Mr. Holdred, when they were carrying the material out to the end of this rail, would you have considered it safe to have used it, if you had known that the bolt had gotten out and had not been replaced at that end ? "

Objected to by Mr. Castle : Your honor will note my objection as before, and in addition now, we have discovered that the employees are using that for some other purpose than it was evidently designed for.   I add that as a further objection.

Objection overruled and bill sealed. [4]

Verdict and judgment for plaintiff for $4,200.   Defendant appealed.

*Errors assigned* were (1) in not giving binding instructions for defendant ; (2–4) rulings on evidence, quoting the bill of exceptions.

*Homer L. Castle*, of *Stone & Stone*, for appellant, cited : Finnerty v. Burnham, 205 Pa. 305 ; Baker v. Allegheny Valley R. R., 95 Pa. 211.

*J. S. Ferguson*, with him *John G. Silveus* and *William P. Carter*, for appellee, cited : Baker v. R. R. Co., 95 Pa. 211 ; Lininger v. Westinghouse Air Brake Co., 210 Pa. 62 ; McGonigle v. Kane, 20 Colo. 292 (38 Pac. Repr. 367) ; B. & Y. Turnpike Road v. Leonhardt, 66 Md. 70 (5 Atl. Repr. 346) ; Lewis v. Seifert, 116 Pa. 628.

OPINION BY MR. JUSTICE STEWART, January 2, 1906 .

Defendant company made no attempt to meet the evidence offered on behalf of the plaintiff, but at its conclusion moved the court to direct a verdict in favor of the defendant.   The court's refusal to so direct constitutes the principal assignment of error.

Plaintiff was employed in defendant's mill, the work as-

signed him being the removal of steel plates from the anvil after they had been hammered.   To facilitate this work a contrivance, very simple in its construction, was used.   An ordinary steel rail, some eighteen or twenty feet in length, was suspended from the beam above, and held in place, about twenty-five feet above the heads of the workmen below, by two hangers, one at either end of the rail, or approximately so. Along this rail ran a trolley, an iron rod from which extended down to the anvil, fitted at the lower end with clamps or hooks. It was the business of the plaintiff to adjust these clamps and hooks to the steel plates that had been hammered, and then, as they were suspended from the rail above, push them along the trolley until the place was reached where they were to be deposited.   While he was so engaged, the end of the rail farthest from the anvil separated from the hanger on which it rested, with the result that the end being without support fell, striking the plaintiff and inflicting upon him serious hurt.   The hanger and rail were not in any way tied together, that is to say, nothing kept the rail in place in the hanger but its own weight.   The force of the burdened trolley running against the hanger would almost necessarily have the effect of driving the hanger back towards the end of the rail, and this, if repeated often without correction or readjustment, would, in all probability, result in pushing it entirely clear of the rail.   Indeed, this is the only explanation of this particular accident that is suggested, and it is accepted by both sides as the true explanation.   The rail inclined somewhat upward from the anvil, and so permitted the trolley to return for its next burden without force being applied.   At the lower end of the rail, that is, the end nearest the anvil and beyond the hanger, there was a bolt through the rail which prevented any separation between the hanger and the rail at that end ; at the other end there was a place in the rail for the bolt, but it clearly appears that there was no bolt there when the accident occurred, and witnesses testified that, from the appearance of the hole, none could have been there for months.   It does not appear that the absence of this bolt would have made the contrivance insecure for the party handling it, except as the trolley was pushed against the hanger.   The hanger could only be reached by the trolley by the application of force since it was up grade to that point.

Was the contrivance, in the condition stated, reasonably safe for the use intended? The court below thought this was a question for the jury, and submitted it to them in a charge so clear and impartial, that no exception is taken but to the fact of submission. We think the facts afforded sufficient basis for the inference of negligence by the jury. This, of itself, without more, would make a submission imperative. The rail along which this trolley ran was about twenty feet in length, including the part that extended outside the hangers. Until about a year before the accident, the plates carried on the trolley were discharged at a point about half the length of the rail from the anvil, and while the work was so conducted, only half the length of the rail being traveled, the hanger or trolley did not come together; but the size of the plates being then increased, greater space was required for their discharge, and it became necessary to use the rail along its entire length, so that the trolley was liable at any time in such use to strike the hanger. In testifying on this point, the witness, Holdred, says: "You had to get away out of the road so a fellow on the back end of the hammer could work, and you had to run it (the trolley) away out." We have here the explanation of how the accident occurred, showing conditions which invited disaster, so long as there was nothing to arrest the outward push of the hanger by the trolley. A simple bolt or rivet would have averted all danger, but neither was there. The defendant company is chargeable with knowledge of the conditions that there existed for so long a period. If it did not know that the increased size of the plates made it necessary to use the rail for its entire length, in order to deposit the plates in the place where they were required, it ought to have known it; if it did not know that there was no bolt or rivet in the end of the rail to keep the hanger in place, it ought to have known that fact, for it was responsible for the changed conditions that made such bolt necessary to safety in the operation of the trolley. It is not simply a case that would warrant an inference of negligence by the jury; it is a case which, upon its admitted facts, would seem to make such conclusion almost unavoidable. The obligation and duty were wholly with the defendant company. No duty rested on plaintiff to investigate whether there was a bolt in the rail; he had a right to assume

that something adequate was there to keep the hanger in place. The absence of everything of this kind was not such a manifest and conspicuous fact that he was bound to observe it. It could not have been revealed to him except by very special investigation, for it was at least twenty feet above his head. The witness, Holdred, whose testimony is above referred to, says: "Yes, sir, and you could not see that thing (the connection between the hanger and the rail), it's about twenty feet high and it is all steam above the hammer, and sometimes you couldn't see five feet up."

We refer to this feature of the case only that the actual situation may appear. Whether plaintiff contributed by negligent omission or commission to the accident, was for the jury, and this, with the question of defendant's negligence, was submitted. A verdict for the plaintiff resulted, which it is conceded accords with reasonable compensation for the injury sustained. It was for the jury to say whether, under the law as given by the court, that compensation should be required of defendant.

The other assignments of error relate to rulings of the court with respect to questions put by defendant's counsel to witnesses who were interrogated as to the safety of the trolley appliance. Objection was made that the questions as put admitted and invited answers that regarded absolute safety, whereas all that is required to exonerate the employer is that the machinery be reasonably safe. The objection was well taken. The court should have required counsel to so frame the question that the witness would know the standpoint from which he was to speak; failing to do this the objection should have been sustained. In view of the very careful instructions from the court in its charge, as to the duty that rests on the employer with respect to the machinery he provides, for those in his service, we are satisfied that in this particular case, the defendant could not have been prejudiced by the answers elicited by the questions objected to. But for this, these assignments might seriously imperil the judgment in the court below. It is of course very familiar law to those accustomed to deal with such questions, that it is only reasonable safety that is required in this connection, and all that is necessary to relieve from liability; but it would be a great mistake to

assume that the average person who comes into court to testify, is acquainted with it. Asked whether it would be safe to work with or about machinery under certain conditions shown to exist, such person, except as he is instructed as to the measure of safety he is to regard, would speak from the standpoint of his own individual notions as to what the law ought to require of the employer, and not what it does, or else from the standpoint of absolute safety. It is enough to know that prejudice would likely result from such a course. The defendant was saved that prejudice by the subsequent action of the court; but the better and safer plan is to avoid the error in the first instance.

The assignments of error are overruled and judgment affirmed.