## Houston *v.* Budke Stamping Company, Appellant.

*Negligence—Master and servant—Dangerous machine—Knowledge of danger—Notice to employer—Risk of employment.*

1. Where an employee is injured by the sudden irregular working of a machine, at which he had been employed for four days without knowledge of its defective condition, he may in a suit against his employer show by the testimony of another employee, that the latter had worked at the same machine two months before the accident, that it had acted on several occasions in an erratic and dangerous way, and that he had notified the foreman who had charge of the machinery of the defect.

2. Where a workman of mature years is placed at a machine, which without his knowledge had worked at times erratically and dangerously, and nothing in his age or experience, nor in the appearance of the machine could lead him to apprehend that the machine would suddenly act in a dangerous way, he cannot be charged with assuming the risk of such action of the machine.

3. Where a workman was directed to work at a stamping machine, and on the first day of his employment the upper die fell, and the foreman charged that he had tramped the treadle, which he at first denied, but subsequently took it for granted that he had, as the machinist and others insisted that he had, the court cannot say as a matter of law that the workman assumed the risk by continuing at the machine after this single occurrence.

Argued April 21, 1908. Appeal, No. 175, April T., 1908, by defendant, from judgment of C. P. Washington Co., Feb. T., 1907, No. 295, on verdict for plaintiff in case of W. S. Houston *v.* The Budke Stamping Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before TAYLOR, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

At the trial plaintiff made the following offer:

The plaintiff proposed to prove by the witness, Charles Mc-Connell, on the stand, that for a period of about three months prior to the Saturday of the third week of June, 1906, he worked at the same press for the defendant company on which the plaintiff was injured; that during the time that he was working on that press the press made a revolution when it ought not to have done so and without the witness' foot upon the treadle; that it did this a number of times; that Hugh Clyde, who was the machinist in charge of the machinery in that department, and whose duty it was to see that the machinery was kept in good repair, was notified by the witness of the fact that the press was coming down when it ought not to come down and when the foot was not on the treadle; this for the purpose of showing that the press was out of order, that the machinist in charge of that department whose duty it was to keep the machinery in order, had knowledge of that fact, and this to be taken in connection with the other testimony in the case, the fact that the plaintiff when he was put to work was given no notice that the machine might come down when the foot was not on the treadle.

Counsel for defense object to the offer as incompetent, irrelevant and immaterial. And for the further reasons that the offer does not propose to show any defect of the machinery at all, nor does it propose to show that there was any defect in the machine at the time of the accident; it simply proposes to show that two months prior to the accident the press came down, to use the language of the offer, when it ought not to have come down; that the offer to show that it came down when the foot was not on the treadle does not necessarily show any defect in the machine, and this two months prior to the cause of the accident; nor does it offer to show that if there was a defect at that time it was not repaired prior to the accident.

Mr. Irwin: I wish to add to my offer, and to prove further that the reason why the press came down at these various times, with his foot not on the treadle, was because it was not properly

adjusted, the various parts were not properly adjusted and the clutch was not thrown out of place when the press ascended as it should have done, and would have been done if the press had been in proper condition.

Counsel for defense renew the objection heretofore made to the offer and add in reply to that as a further objection, that this testimony does not show, nor does it propose to show, that there was any defect or cause of break of the machine, that it simply proposes to show that the clutch did not work, but does not propose to show why it did not work, and neither does it propose to show that if it was out of repair at that time it was not in repair at the time of the accident; nor does it propose to show that it was not repaired between the time it came down, or is said to have come down, and the time of the accident. The two months intervening between the time when the press came down without the foot on the treadle, does not establish that it did or would come down this time, and the offer to show that notice of Hugh Clyde, the superintendent, brings the case within that line of authorities which hold that care is to be presumed upon the part of the defendant as well as the plaintiff, and that having notice of that two months before, if it was out of repair, the law presumes that it was repaired before the accident.

The Court: I know, but Governor Stone, if they show that the superintendent of this machine knew that that machinery was defective then it is a question for the jury whether this case would be tried under the employers' liability act, that was the company; it is a question for the jury to say whether or not the superintendent or the machinist was a vice principal. The evidence in the case so far is that your vice principal or your machinist there, the superintendent, instructed this plaintiff to keep his hands out from under that plunger that went into the die when he had his foot on the treadle. If that plunger descended when his foot was not on the treadle, then he did not receive adequate instructions as to what that plunger might do when his foot was off the treadle; if they had notice prior to that, it is not a question of how long, if the company had notice through its vice principal or its principal that that plunger descended at other times when the foot was not on the treadle.

Therefore, we think this testimony is clearly competent; the other question was withdrawn from us, and we were not permitted to pass on that.

Exception noted and bill sealed for defendant. [3]

Verdict and judgment for plaintiff for $1,500.   Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant, and (3) ruling on evidence, quoting the bill of exceptions.

*William A. Stone*, of *Stone & Stone*, with him *Alex. M. Templeton*, for appellant.—Plaintiff received proper instructions: O'Keefe v. Thorn, 24 W. N. C. 379; Higgins v. Fanning & Co., 195 Pa. 599; Best v. Williamsport Staple Co., 218 Pa. 202; Fletcher v. Traction Co., 190 Pa. 117; Clark v. A. Garrison Foundry Co., 219 Pa. 426.

We believe that this defendant put his foot upon the treadle, and thus caused his injury, as no other satisfactory explanation of the cause of the accident has been given; and in taking these to be the proper circumstances surrounding the accident, the case will be ruled by that of Eisenberg v. Fraim, 215 Pa. 570.

*R. W. Irwin*, with him *Jas. A. Wiley* and *A. T. Morgan*, for appellee.

Opinion by Rice, P. J., February 26, 1909:

The plaintiff while in the service of the defendant operating a finishing machine used in the manufacture of metal drip pans was injured.   His allegation of negligence is based on the grounds that the machine was defective, and known to be so by the defendant, that the existence of the dangerous defect was not obvious to him and that he received from the defendant no sufficient instructions.   The machine and its mode of operation, when in proper working order, are described in the plaintiff's statement of claim and the defendant's bill of particulars substantially as follows: There is a mold in which the pan is set by the workman after it has been shaped by another press, and

when the workman puts his foot on a treadle at his side a die that fits the mold is pressed down by the machinery and finishes the pan. The die is then carried up by the machinery to its position, whereupon, we now quote from the pleadings, "if the press was properly constructed and in proper working order, a clutch would be released by a spring and the press would remain stationary until the workman removed that pan, put another drip pan in position, and put his foot upon the treadle, when that clutch would again be thrown back into position and the machinery would carry the press down and back up again." The plaintiff testified that on the fourth day of his employment, having completed a pan, he took his foot from the treadle, loosened the pan with a file, and then reached in and took hold of a corner of the pan for the purpose of removing it, when the die came down, caught his hand and crushed some of his fingers. Viewing the verdict in the light of the evidence and of the charge of the court we must accept it as an established fact that the plaintiff took his foot from the treadle when the pan was finished and the die sprung up, and kept it off the treadle while he was attempting to remove the pan. This being so, and there being no evidence of outside interference, and it being a conceded fact that if the machine was properly constructed and in proper working order the upper die would have remained stationary until the workman again put his foot on the treadle, the natural inference is that it was not properly constructed or was not in proper working order. This conclusion does not rest on mere inference from what happened at the time of the accident. Charles McConnell worked upon the machine until within about two months prior to the employment of the plaintiff. He testified that during the two or three months he operated the machine the upper die came down when he had his foot off the treadle; that he called this to the attention of the foreman who had charge of the machinery in that department and whose duty it was to see that it was in good repair; that thereupon the foreman adjusted the machine by tightening it or loosening it as the occasion required, after which it ran regularly for a time; that then the upper die fell again without his foot being on the treadle, and again the same process of adjustment was gone

through; and that this occurred at irregular intervals three or four different times. We quote a small excerpt from his testimony: "A. Well, it came on me three or four different times, maybe oftener, but I am positive of that often. Q. And are you or are you not able to say positively that your foot was not on the treadle at these various times? A. I am." The entire testimony of this witness was competent, because it tended to show (1) that owing to defective construction of this particular machine, not to a quality necessarily inherent in that kind of a machine, it was accustomed to work at times in the same irregular manner as on the day of the accident; and (2) that the defendant had notice of this by reason of the knowledge of the person to whom it had delegated charge of the machinery of that department, and the power and duty of keeping it in proper repair. This kind of evidence was held competent, and sufficient to warrant the submission to the jury of the question of the existence of a dangerous defect in the machine and of the employer's knowledge of it in Sopherstein v. Bertels, 178 Pa. 401, and Valentine v. Colburn Co., 10 Pa. Superior Ct. 453, cases very closely resembling the present; and it involves no straining of the cases of Patterson v. Harrisburg Trust Co., 211 Pa. 173, and Gerding v. Standard Pressed Steel Co., 220 Pa. 229, beyond the points actually decided in them, to say that they support the conclusion above stated.

The next question to be considered is whether the court would have been warranted in charging the jury that under the evidence the rule as to assumption of risk applied and barred recovery by the plaintiff. No well-considered statement of that rule goes farther than to declare that by contracting for the performance of hazardous duties the employee assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to observe. It was by the application of this principle to the facts of the cases cited in the appellant's brief that the decisions were reached. The question we have to determine is whether it was the province of the court to instruct the jury that under the evidence in this case the principle must necessarily conclude the plaintiff. The plaintiff was forty-five

years of age and had worked for a number of years as an oil pumper around steam engines, gas engines and machinery of that kind used at oil wells. To a man of his age and experience the danger of putting his hand in to remove the pan while he had his foot on the treadle must have been obvious after he had worked at the machine three days, even if it was not at the beginning. But neither his age nor his experience nor both combined would cause him to apprehend that the machine worked erratically and that at times, unexpectedly and without warning, the upper die would come down after he had taken his foot from the treadle and was removing the pan from the mold in the usual way. On the contrary, the jury might well find that the very instructions his testimony shows he received at the beginning of his work would naturally lead a reasonably prudent man to believe that there was no such dangerous latent defect in the machine which he must guard himself against.

Being asked what instructions he received from the foreman of the gang at the time he was put to work, he testified: "Nothing more than he took a couple or three pans, put it through the press and says, 'that is what I want you to do; the press will work when you tramp the treadle but it won't without, and when you tramp the treadle,' he says, 'don't put your fingers under there;' that is all the instructions he gave me." The foreman's testimony was to the effect that he ran a few pans through the machine to show the plaintiff how it worked and warned him to keep his mind on his work and not to put his foot on the treadle when his fingers were under the press. Whether the plaintiff's version or that of the foreman be adopted as the correct one, it is apparent that the plaintiff was not warned of the dangerous latent defect, that, according to the verdict of the jury, was the efficient cause of the plaintiff's injury.

In Patterson v. Harrisburg Trust Co., 211 Pa. 173, Mr. Justice FELL, speaking of a machine which apparently started automatically and injured the plaintiff who was a workman, said: "What caused the automatic starting of the machine was not shown further than that it was probably due to the variation of air pressure on the valves. It was shown that the self-action

was not due to a condition brought about by wear and tear, but that it was an inherent tendency, resulting from the machine's construction. The danger, then, to which the plaintiff was exposed was not one ordinarily incident to his employment nor obvious to him. No one would anticipate the sudden starting in motion of such a machine because of some peculiarity of its construction. When it was at rest and no one was near it to start it by accident or design, it was apparently as harmless as any other inanimate and quiescent object, and the plaintiff might assume he was safe in standing close to it where his work required him to be. The danger was a hidden one, of the existence of which it might be inferred that his employer knew or should have known. Against such a danger there was a duty to warn him." These remarks are plainly applicable to the present case if the testimony adduced by the plaintiff be believed, unless as is claimed the plaintiff received warning otherwise. This is the last suggestion in the argument of appellant's counsel that need be discussed.

The argument is that the plaintiff cannot set up the insufficiency of the instructions as ground of recovery, because the first day of his employment he learned of the danger from his own experience and continued at work. This contention is based on the following extract from the plaintiff's testimony: "Q. Now, did it come down on you before? A. Yes, sir, the first day I worked there about two hours after I went to work the machine came down while I was taking the pan out, I spoiled the pan; the machinist was standing directly behind me and he came over and fixed it and fixed it up, and he says 'you tramped the treadle,' well, I didn't—I never had worked the machine around enough and long enough to know whether I had tramped the treadle or not, but I took it for granted that I did when they said that the machine was perfectly safe until the treadle was tramped and I went—Q. At that time had you any knowledge of having tramped the treadle as he stated you had? A. No, sir, I didn't. I didn't think I did. Q. Can you state whether you did or not? A. Well, I would say I didn't, but they impressed on me that I had; I hadn't worked the machine long enough to argue the case with them and I took it for

granted that I had; that was the first day I worked the machine." If, as a jury might well find, he yielded his belief in deference to what he considered to be the better judgment of his superior, and relying on the positive assurance at the time he went to work that the press would not work except when he tramped the treadle, it cannot be declared as matter of law that he assumed the risk by continuing at work after this single occurrence. As was said by our Brother PORTER in Valentine v. Colburn Co., 10 Pa. Superior Ct. 453, "It would have been error for the court to hold that it was negligence in plaintiff not to guard against that which defendants had led him to believe was a mechanical impossibility."

After a review of the whole case we conclude that it was clearly one for the jury and that it was submitted in a manner that carefully guarded the defendant's rights.

All the assignments of error are overruled and the judgment is affirmed.