## Leonard, Appellant, *v.* Nazareth Cement Company.

*Negligence—Master and servant—Machinery—Inspection—Cement mill.*

In an action by a workman against his employer, a cement company, to recover damages for personal injuries, a verdict and judgment for the plaintiff will be sustained where it appears that the injuries were caused by the explosion of a kiln in which cement was burnt; that the plaintiff had charge of the operation of the kiln; that the kiln was heated by pulverized bituminous coal mixed with air carried into the kiln by a conveyor; that two kinds of conveyors were used, in the works, one a long one without an inner tube, and the other a short one with an inner tube; and that both if properly equipped were equally safe; that the kiln which exploded was served by a conveyor without an inner tube; that according to the testimony the absence of an inner tube in the short conveyor was dangerous; that the plaintiff could not have known whether there was an inner tube or not; and that the defendant had never made any inspection of the apparatus.

Argued Dec. 5, 1911. Appeal, No. 134, Oct. T., 1911, by plaintiff, from judgment of C. P. Northampton Co., April T., 1909, No. 35, for defendant n. o. v. in case of William Leonard v. Nazareth Cement Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before STEWART, J.

The facts are fully stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for plaintiff for $1,000. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellant.—The rule of law imposed inspection as a direct, absolute and personal duty of the employer as follows:

Where the defect through which an injury occurs is in the original construction of the appliance or instrumentality, notice thereof to the master is unnecessary. In case of structural defects knowledge thereof by master will be inferred: Lillie v. American Car & Foundry Co., 209 Pa. 161; Weller v. Aberfoyle Mfg. Co., 28 Pa. Superior Ct. 102; Finnerty v. Burnham, 205 Pa. 305; Butterman v. Construction Co., 206 Pa. 82; Bartholomew v. Kemmerer, 211 Pa. 277; Wilson v. Union Steel Castings Co., 223 Pa. 167.

If the facts of the case are in dispute the question of remote or proximate cause must go to the jury; if, however, the facts are undisputed and the inference to be drawn from them is plain, and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law: Gudfelder v. Pittsburg, etc., Railway Co., 207 Pa. 629; Cunningham v. Frey, 225 Pa. 456; Franczak v. Cement Co., 42 Pa. Superior Ct. 263.

*Geo. F. Coffin,* of *Reeder & Coffin,* for appellee.

OPINION BY ORLADY, J., March 1, 1912:

This plaintiff recovered a verdict of $1,000 as damages for injuries sustained by him in an explosion which occurred while he was operating a cement kiln for the defendant. This verdict was on a motion for judgment non obstante veredicto, set aside by the court below and a judgment was entered in favor of the defendant. At the same time a rule for a new trial was discharged.

The facts in substance are as follows: The defendant's plant consisted of seven rotary kilns, in which the ground cement rock is calcined. The fuel used consists of pulverized bituminous coal, mixed with air and supplied from storage bins to the kilns by means of a screw conveyor, at the end of which the fuel is brought into a blast pipe and through this by a forced draft into the kiln. The pulverized coal is ignited by the heat of the kiln as soon as it enters it and each kiln had its separate storage bin and conveyor. To regulate the flow of the coal from the bin to the kiln through the conveyor, there was a handle or

lever called a speeder and also slides at the blast pipe and at the bin. In addition to these appliances there was another, called an "inner tube," which the appellant contends was an integral and necessary part of the machinery at this kiln, No. 6, and was known among the workmen as a Gifford conveyor.

The plaintiff was in the defendant's employ in the capacity of a cement burner, and had more than ten years' experience in this character of work at the defendant's and other mills. He had exclusive charge of kilns Nos. 6, 7 and 8, and interchanged with another workman in the care of kiln No. 5, who had the exclusive charge of Nos. 2, 3 and 4.

The duty of a burner is to see that the material is burned properly, the kilns kept in continuous motion while in operation, and to repair visible defects inside the kiln. When the coal is finely powdered and dry this material will flush, or flow into the kiln unless restricted by mechanical appliances, and if permitted to accumulate in the kiln it is liable to cause an explosion by the gases thus generated. It is alleged here that the explosion which caused the plaintiff's injuries was due to the lack or absence of the inner tube in the conveyor, thus permitting the fuel to flow into the kiln too rapidly.

It is admitted that the defendant had no system or method of inspection of the conveyors while in use, and that no inspection had been made of this apparatus at any time.

The reasons given for the conclusion reached by the trial judge in entering the judgment for the defendant, are set out at length in a very painstaking opinion filed with the order. He states that there was no evidence that this particular conveyor ever had an inner tube, or that it was called a Gifford conveyor, and in the absence of evidence as to the original condition of the machine there was no necessity for the jury to consider the question of inspection and further: the object of inspection is not to discover the original construction of a machine, but it is to

discover defects, and while the authorities are undisputed as to the duty of inspection, yet it is also true as we charged the jury, "Now while it is the duty of an employee to inspect machinery . . . . while that is a general duty, yet it depends on circumstances, and there must be evidence before a jury to show the jury just exactly how often and in what way machinery should be inspected, before you can hold the defendant liable for damages for want of inspection."

In charging the jury the trial judge said, "I also instruct you in a matter of law, that this is not the case of a defective machine; it is not the case of a machine that was supplied for use complete and fully equipped, and then by reason of breakage or by reason of wear became defective . . . . there is no evidence that this conveyor to the No. 6 kiln ever had an inner tube or not."

It was rightly considered of special importance on the trial that the conveyor should be clearly identified by some name that would distinguish its character and construction from others of different names. The plaintiff testified, "Q. Do you know the names of the conveyors that were in the Nazareth Cement Mills on June 18, 1908 (the date of the accident)? A. Gifford. Q. Where had you been employed or had worked with Gifford machinery before? A. At the Phœnix, at Nazareth, and the White Hall. Q. When you saw a Gifford apart six years before, what did it consist of? A. It consisted of a screw conveyor and a tube over or encircling it; the case was visible, the inside was concealed in a way that they can be examined easily by unbolting the lid or head end." Edward Kem, an expert burner testified that, Gifford conveyors had an inner tube. This witness had worked with conveyors of this type at three other places; had seen them taken apart, and each had an inner tube around the conveyor; that the ones at kilns Nos. 2, 3 and 4, were not Gifford conveyors, but that at kilns Nos. 5, 6, 7 and 8, they were of that type or kind. John E. Miller, testified that short conveyors were "U" shaped and were generally

called Gifford conveyors. When a new Gifford conveyor is installed there is an inner tube around the conveyor, and that he never saw a new one without such a tube. Phillip German, a burner with twenty years' experience, testified, that the short type of conveyor is called a Gifford, that such a conveyor had an inner tube put there to hold the coal from rushing, that he had put one in at another kiln, that it was twenty-three inches long and made of light sheet iron. John E. Miller testified, that the advantage, if any, between a long and a short conveyor is this: the short conveyor carries the stuff a short distance and it is more freely carried than the long conveyor. The principle of a long conveyor is to hold the stuff and check it to give it a steady supply, and this accomplished what the inner tube does with a short conveyor, it is built just the same as an inner tube. L. H. Roseberry, an expert, who was called by the defendant, and the inventor of the process of using pulverized coal as a fuel with which to burn cement in a rotary kiln, testified very clearly in regard to the manner and risks incident to using pulverized coal, and that the reason for using "a long feed screw to fit in a tube with a very close fit," was the most finished, the most effectual way of preventing the flow or flush of coal into the kiln.

We have carefully gone over this testimony and are constrained to believe that a jury would have been fully warranted in concluding that the short conveyors "No. 6" are well known by employer and employees as "Giffords," and that they, when properly installed, were equipped with what all the witnesses call, an inner tube, to make it safer for use, and that the long conveyor was a substitute for the shorter type, and by reason of its greater length secured the same degree of safety without the inner tube which the shorter type did with it, the purpose in each construction being to prevent the very thing which the jury could reasonably have found to have been the cause of the accident in this case—an unexpected rush, flow or accumulation of coal in the kiln.

If it was not structurally safe to use a short conveyor without an inner tube,—or put it the other way, if it was safer to have an inner tube in such a conveyor, it matters but little to the defendant in the light of his admission that there never was an inner tube in this conveyor— never had been one, and no provision made for using one. The internal construction could not be known to the plaintiff, the defendant was conclusively presumed to know it, and whether defective in original construction, or allowed to become so by use, decay of parts, or negligent inspection, is not material as the continuing and bounden duty of the employer was, not only to furnish a reasonably safe place, Welch v. Carlucci Stone Co., 215 Pa. 34, and with reasonably safe machinery and appliances, but the law imposes upon him the further obligation of using reasonable care to keep such a place and such instrumentalities in a reasonably safe condition, and this is to be accomplished only by a proper and timely inspection, so as to ascertain defects, if any, and repair them, Finnerty v. Burnham, 205 Pa. 305, or as defined in Lillie v. American Car & Foundry Co., 209 Pa. 161, "The duty to provide a safe place to work and to maintain it in a reasonably safe condition by inspection and repair, is a direct personal and absolute obligation from which nothing but performance can relieve an employer, and the person to whom it is delegated becomes a vice principal, whose neglect is the neglect of the employer. See also Gilbert v. Elk Tanning Co., 221 Pa. 176.

The proximate cause of the accident was shown with reasonable clearness to be the rush or flush of coal into the kiln, or it might possibly have been because the plaintiff did not turn over the conveyor at the proper time, or properly manage the air blasts, or to the lack of coal supplied, or the absence of an inner tube. The testimony in regard to each of these was conflicting, and every material fact alleged in regard to each of them was in a sense denied or contradicted, and as such disputed facts, they were submitted to the jury under proper instructions.

Every witness whose attention was directed to that phase of the case testified, that an inner tube would make the operation of the conveyor safer, and the fact that other employers or employees are negligent or reckless in the operation of their machines, is no justification or excuse for this employer in being negligent and reckless—if there is any evidence from which a jury could find the fact of negligence. Had there been a reasonable inspection of the controller, all doubt on this subject would have been removed, and the employer's refusal to do his manifest duty by making any inspection puts him in poor grace to say that the cause of the accident is in doubt.

On trial the jury were told "some of the witnesses have said that the short conveyor was a conveyor that allowed more pulverized coal to go through, that there was more danger of flushing; other of the witnesses have said that it did not make any difference, that the coal would go through at any rate. Before you can find for the plaintiff on that branch of the case, you must find that the conveyor No. 6, the short conveyor, was more dangerous than that which was ordinarily in use in other mills."

Conceding that the mere happening of the accident raised no presumption that it was due to the negligence of the employer, and that a specific act of negligence must be shown, Price v. Lehigh Valley R. R. Co., 202 Pa. 176; Higgins v. Fanning, 195 Pa. 599; Alexander v. Water Co., 201 Pa. 252, and that it is not permissible to guess at the cause and assume that it was something for which the defendant was responsible: Reese v. Clark, 146 Pa. 465.

But we have in this case a large number of intelligent witnesses who by experience are familiar with the operation of this appliance, and testified that in their opinion the explosion was caused by flushing of the coal and that it would have been entirely prevented or at least the risk would have been largely reduced by the use of an inner tube, so that it was not for the court to say, as a matter of law, "that this is not the case of a defective machine," and by ignoring the plain and manifest duty as declared

in many decisions, by refusing to make any inspection, this defendant committed a specific act of negligence, so that it was for the jury and not the court to say whether the evidence tended to show what was the proximate cause of the plaintiff's injury, as well as whether in the light of his experience in the business and with this conveyor in particular, it was a risk naturally and reasonably incident to the plaintiff's employment to continue to work with an appliance such as this: Rummell v. Dilworth, 111 Pa. 343; Danisch v. Amer, 214 Pa. 105; McGeehan v. Hughes, 217 Pa. 121.

The employer had the means at hand to find out the exact condition of affairs and it was his duty to know. The employee will not be presumed to have assumed the existence of defects which could only be discovered by special inspection; McKee v. Steel Co., 213 Pa. 333; Valjago v. Steel Co., 226 Pa. 514. The plaintiff had the right to assume that the machine was a reasonably safe one: Burt v. Jessup Steel Co., 229 Pa. 562; Reed v. American Dyewood Co., 231 Pa. 431; Bardsley v. Gill, 218 Pa. 56.

For the reasons above given the judgment is reversed and the judgment now directed to be entered on the verdict in favor of the plaintiff.