# Keeling *v.* Harrison Brothers & Company, Incorporated, Appellant.

*Negligence—Master and servant—Instructions—Danger not obvious—Defective appliances—Customary devices—Case for jury.*

1. Where in an action to recover damages for injuries to plaintiff's eye resulting from the explosion of a metal ball which plaintiff was endeavoring to test with compressed air, it appeared that the method employed was to attach the ball to an air pressure pipe for the introduction of compressed air; that plaintiff had been given no instructions as to the proper and safe way to make such tests; that the pipe to which plaintiff attached the ball had no reducing valve to reduce or control the pressure of the air, although such device was customarily used in establishments such as defendant's, and that the accident was caused by the excessively high pressure of the air, the danger of which was not obvious, the case was properly submitted to the jury and a judgment on a verdict for plaintiff was sustained.

*Practice, Supreme Court—Assignments of error.*

2. Assignments of error which fail to state the page where the matter referred to is to be found in the paper book or appendix are defective.

Argued Jan. 9, 1917. Appeal, No. 109, Jan. T., 1916, by defendant, from judgment of C. P. No. 2, Philadelphia Co., March T., 1915, No. 1045, on verdict for plaintiff, in case of Harry F. Keeling, Jr., v. Harrison Brothers & Company, Incorporated. Before MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

556 KEELING v. HARRISON BROS. & CO., Appellant.

Verdict—Opinion of the Court.          [256 Pa.

Trespass to recover damages for personal injuries. Before STAPLES, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $9,846 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury.

*Alfred D. Wiler,* for appellant.

*John J. McDevitt, Jr.,* with him *Samuel G. Stem,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 26, 1917:

The plaintiff sued to recover for personal injuries; he secured a verdict upon which judgment was entered, and the defendant has appealed.

Harry F. Keeling, Jr., was a general mechanic in the employ of Harrison Brothers & Company, Inc., at their plant in the City of Philadelphia; he worked there about eleven months, left for a short period, and then returned; at the time of the accident, he had been back in defendant's service for about nine weeks; he was twenty-three years of age when injured. The defendant's plant is equipped with an air pressure system which is used for various purposes in the course of the manufacture of chemicals; the pressure therein is maintained at a standard of eighty pounds; one of the pipes of this system runs through the toolroom in which the plaintiff worked; at the date of the accident, January 20, 1915, this pipe was furnished with a so-called "globe valve," or spigot, to turn on and off the flow of compressed air, when used at that point. On the day of the injury, there was delivered to the plaintiff what is known as a "ball float," which is a hollow, metal sphere, approximately five or six inches in diameter and the thickness of a ten-cent piece, similar to the ball float in the

water tank of every bath room. This float had some leaks in it, which the plaintiff was instructed to repair. In order properly to locate them, the plaintiff put some water into the ball and attached the latter to the air pipe; after marking the places where the water was forced out, plaintiff made repairs accordingly; then, to test the job, he again employed the air pressure; whereupon the ball burst and some hard material struck him in the left eye; as a result, he not only suffered great pain, but has had his sight impaired to such an extent as entirely to disable him as a mechanic.

In addition to the facts already narrated, the testimony, which was fairly and correctly submitted to the jury, is sufficient to sustain the following findings: The air pressure pipe was intended for the use made of it by the plaintiff, and he had been so told by defendant's foreman; he had been given no instructions, however, concerning the proper and safe way to make tests such as he was engaged upon when injured, and there was no appliance of a less dangerous character provided in the defendant's plant for that purpose; it was not obvious, and he did not know the extent of the air pressure carried in the pipe; there was no proof that the plaintiff had ever before used the air pressure in testing ball floats, or other things of a like character; it is usual and customary in manufacturing establishments, where air pressure is used for such purposes, to have in connection therewith a contrivance known as a "governor"; this is "a reducing valve that works automatically, so that, no matter how high the pressure comes in one direction, it will be reduced to a standard pressure, so if you had 150 pounds coming from the reservoir, the governor would automatically reduce that to 40 or 20 or whatever you set it for,......down to one pound"; the use of compressed air in making tests of the kind upon which the plaintiff was engaged at the time of his injury, with such a high pressure in the pipe as 80, without a governor or some other such safety appliance, was not only less safe

than the usual and customary method just described, but it was highly dangerous; in making such tests, no greater pressure than 10 pounds could be employed with safety, for about 15 pounds represents the breaking point; finally, as suggested by certain witnesses for the plaintiff, the fact that the float did not burst on the first test was of no particular significance, for at that time the leaks therein allowed a certain amount of pressure to escape; nor should any controlling effect be given to the fact that plaintiff might have made his tests with entire safety by putting the float in a bucket of water, for, in the first place, that was not the way in which he was directed to do his work, and, next, there was no running water in the room in which he was employed, or nearby, so far as the evidence shows.

The principles governing this case are so well established, and have been so much discussed in our recent opinions, that their reiteration here would serve no useful purpose; for a general statement thereof, we need only refer to: Cunningham v. Ft. Pitt Bridge Wks., 197 Pa. 625, 630-1; McGeehan v. Hughes, 217 Pa. 121, 124, 126; Morrison v. So. Penn Oil Co., 247 Pa. 263, 266; Chambers v. Mesta Machine Co., 251 Pa. 618, 623; Campbell v. Wells Brothers Co., 256 Pa. 446. Here, it is sufficient to say that, on the facts as we must assume them to have been found by the jury, under the law, the verdict was properly sustained; hence, the judgment entered thereon will not be disturbed.

There are nine assignments of error, not one of which complies with our rules, since in each instance they fail to state the page "where the matter referred to is to be found in the paper book or appendix"; therefore, while all have been considered, none will be particularly discussed or specifically passed upon.

The assignments are all dismissed, and the judgment is affirmed.