## Muller *v.* Kirschbaum Co., Appellant.

Argued November 29, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*George Gowen Parry*, with him *Harold C. Roberts*, for appellant.—Negligence or violation of any duty owed by defendant to plaintiff has not been shown: McGeehan v. Hughes, 223 Pa. 524; Stitzel v. Wilhelm, 220 Pa. 564; Shaffer v. Haish, 110 Pa. 575.

There is abundant evidence of plaintiff's contributory negligence.

It is submitted that plaintiff is not entitled to recover on a theory of damages, which is not based on the difference between his ascertained earning capacity before the accident and thereafter but on his profits under a special contract.

*Frank J. Eustace, Jr.*, with him *Wilson & McAdams*, for appellee.—Defendant, having contracted to furnish plaintiff with the coffee urns and with steam to operate them, owed plaintiff a duty of furnishing an apparatus reasonably safe for use and steam at a pressure safe for the type of apparatus furnished: Erie City Iron Works v. Barber & Co., 102 Pa. 156; Stine v. Morgan-Smith Co., 219 Pa. 145; Spencer v. Campbell, 9 W. & S. 32; McGeehan v. Hughes, 217 Pa. 121; Keeling v. Harrison Bros., 256 Pa. 555; Carmont v. R. R., 271 Pa. 122; Fuller v. Stewart, 268 Pa. 328.

The rule of res ipsa loquitur applies: DeMarco v. Steel Co., 247 Pa. 174; Reed v. Ry., 243 Pa. 562; Derrick v. Electric Co., 268 Pa. 136.

Plaintiff was using the coffee urns in the way they were intended to be used and was not contributorily negligent: Keeling v. Harrison Bros. & Co., 256 Pa. 555; McKee v. Steel Co., 213 Pa. 333; Throne v. Traction Co., 237 Pa. 20.

OPINION BY MR. JUSTICE SADLER, January 6, 1930:

Muller, plaintiff, contracted, on March 1, 1924, with the Kirschbaum Company, defendant, to conduct a cafe-

teria in its factory for one year. This arrangement was entered into so that the employees of defendant could secure necessary refreshments on the premises. His compensation was obtained from the profits earned, which averaged $40 a week, until the occurrence of the accident which gave rise to this litigation. Defendant had agreed to furnish the larger appliances required to operate the business, and to supply steam from its boilers for the operation of the coffee urns, to be conducted to coils located therein by a half inch pipe. A safety valve, which gave warning of the presence of an excess of steam was attached, and the waste was carried into a sewer by an outlet provided. The pressure supplied varied from 70 to 90 pounds, but the walls of the receptacles through which the coils passed were designed to bear only 25 or 30, the usual limit of strength of such contrivances. A hand valve was installed on the connecting pipe by which the flow of steam could be controlled, but, according to the expert called, not the amount of pressure. An explosion caused the bottom of one of the urns to blow out, at the beginning of the day's work on December 8th, and the plaintiff was badly scalded. On three occasions, within the preceding five years, the same thing had happened from like cause, as the former proprietor testified. At the time, the whistling of the outlet valve gave notice of the presence of an excess of steam, and an unsuccessful effort was made by plaintiff to shut off the controlling valve. An action for compensation was instituted, and a verdict returned for plaintiff, upon which judgment was entered. This appeal by defendant followed.

The first assignment of error complains of the refusal to enter judgment n. o. v. because of lack of adequate proof of negligence on the part of defendant company, and the second, of the admission of evidence given by an expert whom plaintiff called to establish it. The witness referred to was a practical engineer, and had been engaged for twenty-five years in placing and inspecting

urns, such as here installed, and testified generally as to the proper manner of regulating the flow of steam conducted directly from boilers thereto. He was asked, at one point, as to his familiarity with such devices from the date Muller began work to that of the accident, but his evidence, when examined as a whole, shows an expression of opinion as to the construction of like coffee urns, and the necessary connections therewith, for the twenty-five years he was engaged in carrying on the work for which he was qualified. His statement was to the effect that the outer shell of a receptacle of the kind installed, holding the water to be heated, could not safely stand a strain of more than one-third of that which passed from the boiler to the coils through the steam pipe. Further, he declared a hand stop could not properly control the pressure, though it might the flow, and that a reducing valve was essential to a safe operation, by which it could be made impossible for a dangerous force of steam to pass into the coils, and so prevent the heating of the surrounding water beyond the danger point.

He testified that such protection was customarily provided in similar constructions elsewhere. It is true that proof of a variance by defendant from the ordinary usage and practice employed in like business does not in itself establish negligence, since such rule would make one responsible for not adopting the most recent improvements and devices, when another might be safely employed: McGeehan v. Hughes, 223 Pa. 524; Titus v. R. R., 136 Pa. 618. But if it is further shown, as it was here, that the device used is not merely unlike that ordinarily employed in similar work, but is unusual and dangerous, there is proof of lack of due care from which negligence can be found: Campbell v. Wells Bros., 256 Pa. 446; Liptak v. Kurrie, 244 Pa. 117; Fullick v. South Penn Oil Co., 260 Pa. 4. It must appear that the course pursued in the employer's establishment is not only different from the one generally adopted but more haz-

ardous: 39 C. J. 1026; McFadden v. Phila., 248 Pa. 83. Fleming testified not only that it was the custom to use a reducing valve, under circumstances here appearing, where the possible pressure, resulting from the large flow of steam introduced into the coils, was in excess of 25 or 30 pounds, but the adoption of any other plan constituted a risk which made likely an accident, as here resulted. This made necessary submitting to the jury the question as to the exercise of due care by defendant: Keeling v. Harrison Bros. & Co., 256 Pa. 555; Morrison v. South Penn Oil Co., 247 Pa. 263; Leonard v. Nazareth Cement Co., 49 Pa. Superior Ct. 535.

Knowingly to supply excessive pressure, from which injury may necessarily result, is negligence: Spencer v. Campbell, 9 W. & S. 32. If the admission of an undue amount of steam was due to the act of plaintiff in failing to exercise adequate control of the valve actually provided, there could be no recovery (Stitzel v. Wilhelm Co., 220 Pa. 564), but the facts in the present case did not convict Muller of contributory negligence as a matter of law (Carmont v. Erie R. R. Co., 271 Pa. 122), and the possibility of the injury having been caused by his own conduct, thus relieving the defendant, was properly submitted to the jury, which returned a verdict in his favor.

The third complaint of appellant is based on the admission of evidence that, on three occasions within the preceding five years, a like accident had occurred from the same cause. It was the duty of defendant, under its contract, to furnish reasonably safe appliances for the use of plaintiff, who was placed in temporary charge. If it knew of the defect and danger and failed to correct it, the jury was justified in finding it legally responsible for the loss occasioned (39 C. J. 1155; Walbert v. Trexler, 156 Pa. 112), and this would be true if, by reasonable inspection, the dangerous situation could have been discovered: McKee v. Crucible Steel Co., 213 Pa. 333. Evidence of previous similar mishaps, of which defendant

had knowledge, coupled with proof of failure to remedy the defect, is admissible to establish lack of due care: Fuller v. Stewart Coal Co., 268 Pa. 328; Baker v. Hagey, 177 Pa. 128; Sopherstein v. Bertels, 178 Pa. 401; C. G. W. R. R. v. McDonough, 161 Fed. 647; Houston v. Budke Stamping Co., 38 Pa. Superior Ct. 93; Rinker v. Colonial Iron Co., 68 Pa. Superior Ct. 258. Knowledge of the likelihood of injury is imparted by information of like occurrences under similar circumstances, and is a fact to be considered by the jury in determining whether proper precautions were taken: Hollis v. U. S. Glass Co., 226 Pa. 332. The trial court therefore properly admitted the testimony of the former proprietor, Mrs. Lafferty, to the effect that the bottom of the urn had blown out on three previous occasions because of excess steam pressure, and that defendant was aware of this.

The fourth assignment is based on the refusal to strike out the statement of plaintiff that he had previously earned forty to fifty dollars a week, in view of the fact that on some occasions he received little or nothing, and had no books showing with exactness the sums he took in. He did state that his average earnings before the accident reached the lesser sum named, and the truth of this assertion, though indefinite, as the court told the jury, was for it to pass on. The fifth error complains of the charge in allowing an estimate of loss to be based on this declaration of earning capacity, in view of the fact that it represented the profit made on a contract which expired on March 1st, following the accident. The plaintiff worked until December 8, 1924, and, as a result of the injury, was either in a hospital or under medical attention at his home for seven weeks thereafter, without performing service of any kind. Whether he earned anything after his return to the cafeteria in February, though incapacitated from continuing his labor as before, is not clear. He did collect some money, though the amount was not definitely fixed, and it does not affirm-

atively appear that it was sufficient to pay his assistants. The court practically withdrew from the jury consideration of the loss until March 1st, when the contract terminated. It was shown that, for three months thereafter, because of his injury, the only employment he was able to secure netted him but $25 a week, and thereafter he could earn only $30. It was proper to prove what he had taken in as profits before the accident, even though the sums were varying, so that the amount of decrease in earning capacity could be determined. The profits, which the plaintiff gained previously, are to be considered, in connection with the ability to earn thereafter, in determining his loss: Dempsey v. Scranton, 264 Pa. 495; Simpson v. P. R. R., 210 Pa. 101; McLane v. Pittsburgh Rys. Co., 230 Pa. 29; Rothkugel v. P. R. T., 92 Pa. Superior Ct. 105.

There was proof of medical expenses, as well as loss of wages for a considerable period, and the manner of measuring its extent was carefully explained to the jury. In view of the injuries to plaintiff, resulting in seven weeks of confinement in a hospital and at home, with subsequent necessary medical attention, including three skin grafting operations, by which 36 pieces were attached to his chest and arm in an effort to restore his usefulness, accompanied by inevitable pain and suffering, leads to the conclusion that the verdict of $3,556 was a moderate allowance for the loss sustained, and certainly cannot be said to be excessive: Miller v. Coca Cola B. W. Co., 297 Pa. 41. The question of damages was fairly presented to the jury, and we cannot see that harm was done to defendant by any statement made.

Under the facts, the court could not have entered judgment n. o. v. for the defendant, and we find nothing in the charge, as to damages recoverable, which would justify the granting of a new trial.

Judgment affirmed.