# Reed *v.* American Dyewood Company, Appellant.

*Negligence—Master and servant—Safe place to work—Tools and appliances—"General use" rule—Dust explosion—Defective appliance—Electric motor—Notice of danger—Proximate cause—Question for jury.*

1. The duty of a master does not require that he protect his servant against all dangers or casualties. He is bound to furnish a reasonably safe place to work and reasonably safe tools or appliances with which to work. The standard or measure of safety depends upon the kind and character of work done. Some kinds of work are more dangerous than others and some tools and machinery are more complicated and necessarily involve more risk than other kinds. These varying conditions must always be taken into account in determining the measure of safety required in such cases. As a general rule a manufacturer meets the requirements of the law when he furnishes the kind of tools or appliances in general use in the particular line of manufacture in which he is engaged.

2. In an action by an employee against his employer for damages for injuries received in a dust explosion in defendant's logwood mill the question of the defendant's negligence is for the jury and a verdict for the plaintiff will not be disturbed where there is evidence to show that an electric motor, necessary to the manufacturing process, was placed in the fustic room, several feet above the floor and near the wall of the mill; that the motor was neither covered nor guarded; that for several weeks prior to the accident it had been emitting sparks at frequent intervals and of various sizes, many having the appearance of a flame two or three inches long; that the fustic room was filled with dense clouds of wood dust, which settled thickly over the entire interior of the room; that the motor was defective and that this defective condition caused the emission of the sparks or "flame," and a witness who was in the fustic room at the time testified that about a minute before the explosion he "heard a racket and the motor slow up, she went right off in my face;" that the motor exploded and "flames of fire shot in my face and knocked me out," and that immediately after he saw the flash from the motor, one of the walls in the fustic room blew out into the room adjoining.

3. Under such conditions, even if an explosion had not been anticipated, the danger from fire was sufficiently apparent to the average man to put the employer on notice, and steps should have been taken to protect the employees against that danger.

*Court and jury—Instructions—Use of figures—Practice, C. P.*

4. It is not reversible error for a judge in charging the jury in a negli-

gence case to use figures by way of illustration, if he instructs the jury that he is only using the figures by way of illustration, and with no intention of indicating what he thinks the verdict should be.

Argued Feb. 6, 1911. Appeal, No. 148, Jan. T., 1910, by defendant, from judgment of C. P. Del. Co., Dec. T., 1908, No. 282, on verdict for plaintiff in case of George H. Reed v. American Dyewood Company. Before Fell, C. J., Brown, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Broomall, J.

The American Dyewood Company, of Chester, was engaged in the manufacture of logwood and fustic extracts and dyes, in which process the wood was chipped and ground into dust, clouds of which permeated to a greater or lesser extent the fourth and fifth floors of the building.

The plaintiff, George H. Reed, was employed at a chipping machine which was located on the ground outside the wall of the main building, but which was connected with the upper floors where the fire started by a spout or tube. On April 28, 1908, the plaintiff was severely burned by a tongue of flame which shot out of the "splint spout" leading to the chipper at which he was working.

In the course of the manufacturing process, the finely divided wood was stored, preparatory to extracting, in three rooms on the fifth floor of the mill, among them the fustic room, to which the dust was carried by an overhead conveyor and dropped on the floor in piles, to be later dumped through trapdoors arranged for that purpose into cars on the floor beneath.

Further facts appear in the opinion of the Supreme Court.

At the trial the court instructed the jury as follows:

Now, he has introduced by the evidence the fact that his earning power at the time of this injury was $12.00 per week. He is a man about fifty years of age. Twelve dollars per week of constant work, unremitting work, day

in and day out, week in and week out, and month in and month out, produces in the course of a year about $600. All men do not work all the time. Men lose time through various causes, lose time through sickness, lose time sometimes because they don't want to work, lose time because of diversion, entertainment, and lose time sometimes because there is no work to be had, so that you would consider whether it would be right or proper to start off with $600 a year. Would it or would it not be? If you conclude that it would not, then you would reduce the $600 per year down to a figure that you would conclude would be a fair figure, say, for whatever span of life you may conclude he probably will live—would have lived if he had not been injured. I am only suggesting now a system, you understand. You are not bound at all by any system that I suggest. You adopt your own system, but it is proper that you should get at a result, if you come to this question, in a systematic way.

Now, if you reduce the sum of $600 considering that you are looking forward to a term of twenty years—a man does not work as much when he gets toward seventy as he does about fifty—when you come to reduce the $600, by how much would you reduce it to say what this earning power of this man was if he should live twenty years, per annum? Would you or would you not be safe in reducing it one-third? Adopt your own figures, but would you or would you not be safe in reducing it one-third? If so, then you would count on his earning power at about $400 a year, $300 or $400 a year,—$300 if you reduce it half, or $400 a year.

Now, you would have gotten, if you pursue that line—you would have gotten to a point where you would conclude in this man's favor that during twenty years he would make, he would have acquired $8,000 by his labor. Twenty times $400 is $8,000. Now the proposition would be: What amount of money, taken now, and put at interest, will pay him $400 a year, and run out at nothing at the end of twenty years? Whatever verdict is awarded to

him, of course, it is his duty—it would be his duty to put it to income bearing, and if five per cent per annum is a fair figure to calculate, the question would be then: What amount taken now and put out at interest at five per cent will produce a fund which would pay him $400 per annum, if you adopt that figure—$400 per annum, and run out to nothing twenty years hence, if you fix twenty years as the period of life? Now, you will find, if you apply arithmetic to it, that $5,333 put out at interest at five per cent, and kept at interest—first starting with $5,333, and reducing it to $400 per year, kept at interest for twenty years would produce a fund of $8,000, which would pay him $400 a year for twenty years.

Now, that is only an illustration of getting at it in some systematic way. And, as I repeat again, in order that I may not be misunderstood, because I do not assume to control you in the adoption of your system, but I only suggest the advisability, propriety of adopting some system, if you come to this question, and render a verdict which is the result of some mental application to it, and I repeat, that if you will try arithmetic, a sum of $5,333 placed at five per cent and reduced $400 per annum will produce a fund which will pay this man $400 per annum for twenty years. Now, that is all the light that I can give you upon the subject.

Verdict for plaintiff for $6,000 and judgment thereon. Defendant appealed.

*Errors assigned* were (1, 2) in refusing binding instructions for defendant; (3) in charging as above.

*John Hampton Barnes* and *William I. Schaffer*, for appellant.—The causal connection between the sparking of the motor and the ignition of the substance which first took fire was not proven and, therefore, no negligence was shown; Reese v. Clark, 146 Pa. 465; Alexander v. Penna. Water Co., 201 Pa. 252; Wojciechowski v. Spreckles' Sugar Refining Co., 177 Pa. 57; Zahniser v. Penna. Tor-

pedo Co., 190 Pa. 350; Snodgrass v. Carnegie Steel Co., 173 Pa. 228; Lawson v. American Steel & Wire Co., 204 Pa. 604.

Notice to a master that an appliance is out of order is not enough. He must know of the danger to the employee to be liable: Corcoran v. Wanamaker, 185 Pa. 496; Wall v. Lit, 195 Pa. 375; Allison Manufacturing Co. v. McCormick, 118 Pa. 519; Gundelsweiler v. Jayne Chemical Co., 161 Pa. 23; Kilbride v. Carbon Dioxide & Magnesia Co., 201 Pa. 552; Dalton v. Towanda Borough, 215 Pa. 402.

Plaintiff's proofs did not point to any negligence of the defendant as the cause of plaintiff's injury with such a degree of certainty as to justify the jury in finding it to have been the proximate cause: Ott v. Boggs, 219 Pa. 614.

*Joseph H. Hinkson*, with him *J. DeHaven Ledward*, for appellee.—An employer who has had ample opportunity to discover a defective appliance and does not repair it within a reasonable time, is liable in damages to an employee who is injured by reason of the defective appliance while in the performance of his duties: Bennett v. Glass Co., 158 Pa. 120; Gudfelder v. Railway Co., 207 Pa. 629; Wiedeman v. Everard, 56 N. Y. App. Div. 358 (67 N. Y. Supp. 738; 166 N. Y. 598; 59 N. E. Repr. 1132).

Defendant knew or ought to have known that under the condition a fire was likely to occur at any time and that would be followed by an explosion: Butterman v. Mc-Clintic Marshall Const. Co., 206 Pa. 82; Hine v. Cushing, 53 Hun, 519 (6 N. Y. Supp. 850); Tissue v. R. R. Co., 112 Pa. 91; Hope v. Fall Brook Coal Co., 3 N. Y. App. Div. 70 (38 N. Y. Supp. 1040); Stoltenberg v. R. R. Co., 165 Pa. 377; Gudfelder v. Railway Co., 207 Pa. 629.

OPINION BY MR. JUSTICE ELKIN, April 24, 1911:

If the combustion, or explosion, or whatever it was that caused the accident, resulted from sparks emitted from the defective and unguarded motor in the fustic room,

this case was for the jury on the question of negligence. This was the theory upon which the case was tried and as we understand the contention of appellant it is not denied that if the explosion was occasioned by the emission of sparks from the motor, the jury might infer negligence for which appellant would be answerable in damages. The contention is earnestly made that the evidence is not sufficient to warrant an inference that the explosion was occasioned by the emission of sparks from the motor in the fustic room, and that the probable cause of the accident was left to mere conjecture. It is suggested that the unfortunate occurrence was the result of unforeseen conditions which could not have been anticipated and for which no one is responsible. If the injuries for which damages are sought to be recovered resulted from causes beyond the control of appellant, or if the explosion was accidental and without fault on the part of anyone, or if latent and dangerous agencies, unknown to appellant and so unusual as not to be anticipated in the exercise of ordinary business judgment, caused the injuries complained of, there could be no recovery on the ground of negligence. The duty of a master does not require that he protect his servant against all dangers or casualties. He is bound to furnish a reasonably safe place to work and reasonably safe tools or appliances with which to work. The standard or measure of safety depends upon the kind and character of work done. Some kinds of work are more dangerous than others and some tools and machinery are more complicated and necessarily involve more risk than other kinds. These varying conditions must always be taken into account in determining the measure of safety required in such cases. As a general rule a manufacturer meets the requirements of the law when he furnishes the kind of tools or appliances in general use in the particular line of manufacture in which he is engaged. If these were the only questions involved in the present case we would unhesitatingly say that the place as well as the tools and appliances in general use in the manufacturing estab-

lishment were reasonably safe within the meaning of the law. But these are not the only questions, and it becomes our duty to give further consideration to the facts in order to determine the legal rights of the parties. The evidence shows that a motor, necessary to the manufacturing process, was placed in the fustic room several feet above the floor and near the wall of the building. This motor was neither covered nor guarded. For several weeks prior to the accident it had been emitting sparks at frequent intervals and of varying sizes. Some of the witnesses testified that these sparks frequently had the appearance of a flame two or three inches long. The fustic room in which the motor was located was filled with wood dust while the plant was in operation. This wood dust settled on the floor two or three inches deep and covered the walls, ceiling and entire interior of the room. Employees working there tied handkerchiefs over their mouths and noses in order to protect themselves against this cloud of wood dust, which at times was so dense as to limit the range of vision to a few feet. These were the conditions in the room in which the motor was constantly emitting sparks, or as some of the witnesses called them, flames of fire. The motor had been emitting these sparks for several weeks before the accident occurred. There was some evidence tending to show that the motor was defective and that this defective condition caused the emission of the sparks, especially those described by the witnesses as flames. It is contended for appellant that a motor in first-class condition will emit sparks and that there was nothing so unusual in the present case as to put it on notice of anticipated danger from this cause, certainly not that an explosion might result therefrom. It may be conceded that appellant was not bound to anticipate what did actually occur. If such an occurrence had been anticipated, the instincts of humanity and self-interest would have suggested that steps be taken to guard against consequences so appalling. The case in our opinion does not turn upon what knowledge the appellant had, or did not have, as to

the explosive character of wood dust. It does not require expert knowledge to inform a person with ordinary intelligence that a spark or flame two or three inches long may and sometimes will ignite wood dust. This is within the common knowledge of every person. As an illustration take the conditions in the fustic room as shown by the evidence, the average man, master or servant, would say at once that it was dangerous to have sparks or flames frequently thrown out into such an atmosphere. The danger from fire at least would seem to be apparent even if an explosion had not been anticipated. We think the danger was sufficiently apparent to put the employer on notice and that steps should have been taken to protect the employees against that danger. A little care and very slight expense would have averted the danger and saved an innocent employee in another part of the building and whose duties did not require him to have any knowledge of the conditions in the fustic room, from the grievous injuries suffered. It is true, as is contended for appellant, that a servant is not entitled to have his case submitted to the jury, unless he introduces, in addition to the fact of the happening of the accident, testimony which fairly tends to show negligence on the part of the employer. In the absence of such additional testimony, save in those exceptional cases in which the doctrine of res ipsa loquitur applies, an action for damages is not maintainable: Labatt on Master and Servant, sec. 835. It is perhaps unnecessary to remark that the doctrine of res ipsa loquitur has no application under the facts of the present case. In this case the burden was on appellee to prove substantive facts from which the inference of negligence might be fairly drawn, and in our opinion the proofs submitted were sufficient for this purpose. The testimony of the eyewitness, Moore, who was standing in the fustic room at the time of the accident, and who saw and heard what occurred in connection with the motor, if believed by the jury, as it evidently was, fully warranted the inference that the trouble originated in and around the motor. He

describes where he was and what he saw and did at the time of the accident. He testified among other things, that, "I was up there [meaning in the fustic room] about a minute before the explosion. Time enough to stoop down and open up the hole in the floor. I heard a racket and the motor slow up, she went right off in my face." He accounted for the accident by saying that the motor exploded, and when asked what he meant by saying the motor exploded, he replied, "Flames of fire shot in my face, and knocked me out."

He also testified that immediately after seeing the flash of fire from the motor, "the brick wall partition between the redwood department and the fustic department blew out." He further testified that the brick wall partition between the two rooms was blown away from the fustic room and toward the redwood room. The only inference to be drawn from these facts is that the explosion occurred in the fustic room, and that the trouble originated in and about the motor. The emission of sparks, or flames of fire, would account for all that happened. We cannot agree that the testimony of the witness, DeShields, who was also on the fifth floor of the building but in another department, contradicts Moore. Indeed, as we read the testimony of these witnesses, one corroborates the other in all essential particulars. Certainly there is no greater variance as to the details of the accident than would be expected in the testimony of two witnesses subsequently relating what took place at the time of this most unusual occurrence. But even if different inferences might be drawn from their testimony it was the duty of the jury to draw them. DeShields testified, among other things, "I heard this noise, and I whirls around and goes toward the steps [meaning the stairway leading from the fifth down to the fourth floor] and I heard the noise again, and when I heard the noise I seen something like electricity and in the meantime the whole thing just lit up and I started to run down the stairs; and I got down about half-way of the steps and so I don't remember getting down on

the floor, but I soon recovered; when I found myself I was on the floor, and I gets up from there then and made a dash toward the big door and was going to jump out the fourth story window." These were the only witnesses on the fifth floor at the time of the accident. The one was in the fustic room and saw and heard what occurred there, the other was in another department separated by a wall, but it was possible for DeShields to see all he says he saw through the open stairway which in a way connected the two departments. Their testimony warranted the jury in finding that the explosion occurred on the fifth floor in the fustic room, and the only reasonable inference from all the facts is that the sparks, or flames so called, emitted from the motor, were the proximate cause of the explosion. Under these circumstances it would have been error to have withdrawn the case from the jury.

The third assignment raises a different question. It is contended that the learned court below committed reversible error in using figures by way of illustration in the computation of damages. Benson v. Railway Company, 228 Pa. 290, is relied on to sustain this contention of appellant. That case is not authority for the position taken here. It was there pointed out that the use of figures by way of illustration in charging a jury as to a method of ascertaining the present value of loss of future earnings is a dangerous practice, but such use of figures is not ground for reversal, if the judge instructs the jury that he is only using the figures by way of illustration, and that he did not intend to indicate what he thought the verdict should be. The judgment in that case was affirmed although practically the same question was raised there as here. As we review this record no harm was done appellant by use of the illustration about which complaint is now made. Indeed, the effort of the trial judge was to impress upon the jury the important fact in the consideration of such cases, that the present worth of future earnings should be their guiding thought in arriving at a proper verdict. All of which tended to protect appellant

and was not in disregard of its rights. The learned counsel for appellant must have been impressed with this view of the situation at the time of the trial because no points were submitted nor requests made for more definite instructions on this branch of the case. We are not convinced that any harm was done appellant by the instruction complained of and do not feel warranted under all the circumstances in reversing the judgment on this ground.

Assignments of error overruled and judgment affirmed.