## Kantner v. Hynniman

*Martin E. Cusick*, for plaintiffs.

*George Hardy Rowley*, for defendant.

McKAY, J., May 8, 1958.—Following verdicts for plaintiffs in the above entitled case, defendant has moved for a new trial. The reasons assigned are: (1) That the court erred in admitting evidence that defendant's speed was excessive in the absence of an averment to that effect in the complaint; (2) that the verdict of $12,500 in the survival action was excessive; and (3) that the court erred in refusing to withdraw a juror when defendant's counsel in his oral argument quoted specific sums not based upon evidence while illustrating the application of the principle of present worth of future loss of earnings.

The case is a survival action for wrongful death brought by plaintiffs as administrators of the estate of their 16-year old daughter, Patricia Kantner, who was killed in an automobile accident on July 14, 1956. Decedent was a guest passenger in an automobile operated by defendant, who was driving in a northerly direction on the Greenville-Jamestown Road in Greene Township when his vehicle left the east lane of the highway, crossed the center line, went off the west edge, travelled 149 feet on the west berm and collided with a power pole.

The first reason assigned for a new trial is obviously without merit. The complaint alleges, inter alia, the above facts and avers that defendant was negligent in failing to have his car under proper control. It would be relevant to this averment to prove the speed at which the car was being operated by defendant immediately before the accident occurred.

The verdict of $12,500 in the survival action cannot be said to be excessive. The evidence showed decedent to be a talented high school student, enjoying good health, with musical ability, whose declared intention was to become a nurse. We cannot say that the present worth of her loss of future earning power could not amount to the sum awarded by the jury.

The third reason assigned, namely, that counsel's references in his argument to specific amounts not based upon evidence required withdrawal of a juror, presents a more difficult question.

In the course of his argument to the jury counsel for plaintiffs undertook to explain the meaning of present worth as applied to damages for loss of future earning power of decedent.

Plaintiffs' counsel has filed an affidavit setting forth his recollection of the substance of his argument on this point which, in its essentials, is the same as our own recollection. It reads:

"With relation to the survival action, you shall take into consideration the earnings of the decedent during her reasonable expectancy and subtract therefrom the cost of maintenance and reduce the balance to its present worth. You shall consider a number of factors, namely:

"(1) What is her expectancy? Would she survive?

"(2) What would she earn during that period?

"(3) Would she marry? If she did, would she continue to work?

"(4) When do people retire?

"(5) Assume that she lived and earned until she was 65. From the age of 21, that would give her an expectancy of 44 years. You take and multiply the number of years times her income.

"(6) Then, you subtract the cost of her maintenance.

"(7) Then, you reduce it to its present worth. The interest rate, of course, according to the Supreme Court must be the legal rate of interest.

"(8) Suppose, for example, that she saved or netted $1200 per year, i.e., $100 per month for 46 years. During a period of 46 years, that would mean $55,-200.

"(9) We use the following formula in reducing that sum to its present worth: P-the sum. i.e.,

$$\frac{\$55,200}{1 - (46 \times 6)} = 3.76 \,[1]$$

"(10) The next step then would be to divide $55,-200 by 3.76, which would result in $14,680.85.

"Now, you know that most people retire at age 65 because that's when social security begins for males. Of course, for females, it's a little different. They may retire at 62 or 63 instead of working until age 65. Everybody knows that Congress has passed such laws, which provide for social security."

Assuming that counsel's argument is correctly set forth in the above affidavit, it appears to us to be of questionable propriety in three respects. First, and least important, it is a detailed explanation of the measure of damages for decedent's loss of future earning power, and hence actually amounts to a charge to the jury on that point. In our view, an attorney's responsibility in oral argument is to sum up the evi-

---

[1] It is possible that the sign minus (—) is in error and that the sign plus (+) is intended, since $1 + (46 \times .06)$ would equal 3.76.

dence and argue the conclusions therefrom that would call for a verdict in his client's favor. It is the court's function to explain to the jury the measure of damages and, in proper cases, to illustrate it.

In the second place, counsel in his explanation, used as an illustration a mathematical formula in a field where, in our opinion, formulae are inappropriate for the reason that the factors which enter into any estimate of the present worth of future earnings are so variable and intangible that they do not lend themselves to expression by means of a formula. For example, in the present case, counsel's illustration assumes that the annual earnings of decedent, less her maintenance, will be a definite and constant sum per year for her life expectancy. If she had lived, however, her earnings would vary from time to time as she grew older and as she adopted different means of earning her livelihood.

Moreover, even if a formula could be arrived at that is accurate and practical of application, the formula suggested to the jury in this case is too complicated to be understood by them. They would first have to study the meaning of the formula itself, which would be difficult even for a jury equipped with pencil and paper and having adequate time for this purpose. It would be impossible for an average jury, not permitted to take notes, to master the formula here used in the few moments during which counsel presented it in his argument.

The essential difficulty with counsel's argument, however, and the only phase of it to which defendant excepts, is that it mentions a specific sum of money with the implied suggestion that the jury should use it in arriving at the amount of damages for future loss of earning power. Counsel referred to the figure of $1,200 as a possible amount of decedent's annual net

earnings after maintenance, and using that as a basis, computed $55,200 as the total which would have accumulated at the end of her life expectancy. He then used the formula to reduce the total sum to its present worth, and arrived at the final figure of $14,680.85 as the amount of the proposed verdict.

Counsel for plaintiffs replies that he was merely illustrating how a jury might compute present worth, and of course, he expressly stated to the jury that such was his purpose.

As we review the situation, however, it seems clear to us that the effect of the illustration on the minds of the jury could scarcely be other than to suggest an appropriate sum for a verdict. Faced with the extremely difficult task of remembering and attempting to apply the instructions of the court on the subject of present worth, a jury would be strongly tempted to grasp at the simple solution offered by counsel's illustration, especially since it was formidably expressed in what appeared to be an established mathematical formula, and return a verdict in the amount used in the illustration. That is just about what they must have done in this case, for the illustration suggested the sum of $14,680.85 whereas the verdict as rendered was $12,500.

When there is evidence of specific amounts of damage, as in the case of past earnings, or actual expenses incurred, it is proper for counsel to refer to such sums and arrive at definite computations. But in our opinion, when the subject at hand is future loss of earning power, as to which there is and can be no evidence as to specific amounts, it is prejudicial error for counsel to suggest any amount whatever to the jury, and the fact that the suggestion is by way of the innuendo of illustration does not lessen its prejudicial effect.

It must be conceded that the exact question before us has not arisen in the decided cases, but the principle

applicable to its proper answer is well established. For example, in many States it is the practice for counsel to mention to the jury the amount of damages claimed by plaintiff in the complaint. When the additional explanation is made that the jury is not to be governed by that amount, but solely by the evidence produced at the trial, it would appear that the mentioning of the sum claimed is as innocuous a suggestion for a possible verdict as an illustration of how to compute present worth of certain assumed earnings.

But in Pennsylvania, the Supreme Court has expressly held that the mere mention to the jury, whether by court or counsel, of the sum claimed by plaintiff is prejudicial error because its places in the minds of the jury a definite sum of money not supported by the evidence.

In Reese v. Hershey, 163 Pa. 253, 258, the trial judge read the statement to the jury including the averment of damages, which was $1,000, and the verdict was for that amount. In reversing, the Supreme Court said: "This is exceeding bad practice. It tends to get figures and amounts into the jury's mind without evidence."

Similarly, in Hollinger v. York Railways Company, 225 Pa. 419, the Supreme Court held it to be error for the court to read the amount claimed to the jury, stating at page 425: "Placing the figures named in the statement before the jury in the court's charge gives a basis, not established by evidence, on which to calculate the verdict. Admonitions by the Court that such was not the purpose in stating the amount will not be sufficient to eliminate it entirely from the minds of the jurors."

In Carothers v. Pittsburgh Railways Company, 229 Pa. 558, counsel for plaintiff in his argument stated the suit had been brought for $25,000. The court held

that it was reversible error for the lower court not to have withdrawn a juror and referred to counsel's action as an attempt to obtain an unfair advantage in the trial of a case.

We do not consider the argument of counsel in the present case to be an attempt to obtain an unfair advantage but in our opinion the same reason for withholding from the jury the amount claimed in the complaint applies with equal force to the use of an illustration which specifies a particular sum not based upon evidence. The result of the reference to particular figures in the oral argument in both situations is the same, viz., the fixing in the mind of the jury of a definite sum not founded upon the evidence.

There are other illustrations of the rule that an amount should not be mentioned to the jury when there is no evidence to support it. In Wagner v. Hazle Township, 215 Pa. 219, plaintiff offered in evidence a record of the case of the same plaintiff against another defendant for the same damages and stated that it was "for the purpose of showing the jury gave plaintiff $6,000 and that the Supreme Court reversed, saying that the Traction Company wasn't responsible but that the township was bound to keep its own road in repair." The Supreme Court held that a juror should have been withdrawn and stated: "It (the offer of proof) was a criterion for the jury in considering the case which they evidently would accept and which no language of the trial judge could drive from their minds."

In Stassun v. Chapin, 324 Pa. 125, counsel for defendant in his closing address to the jury stated: "Mr. Swaney wants to condemn Dr. Fleming so that we will get only a small verdict of three or four hundred dollars." While the court affirmed the action of the lower court in refusing to withdraw a juror be-

cause of the peculiar circumstances of that case, it said, page 126:

"Remarks by counsel which are aimed to have the jury substitute prejudice or passion for reason and intelligent analysis of the evidence, are wholly reprehensible, and call for immediate repudiation by the trial judge and in some instances for the more drastic remedy of the withdrawal of a juror. In cases where the damages are unliquidated and incapable of measurement by a mathematical standard, statements by plaintiffs' counsel as to the amount claimed or expected are not to be sanctioned, because they tend to instill in the minds of the jury impressions not founded upon the evidence."

In Miller v. Pennsylvania Railroad Co., 361 Pa. 24, plaintiff's counsel in his argument assumed that plaintiff would have worked for the railroad until he was 65 or 70 years of age and stated to the jury that this loss of earnings amounted to at least $25,000 and that they should start with that and add a sum for pain and suffering. The court withdrew a juror on the ground that the attorney for plaintiff had misled the jury and the Supreme Court affirmed this action. While the Miller case is admittedly far stronger in its facts than the case at bar, it affords an extreme illustration of the principle involved in the present case.

In the case of Connelly v. Pittsburgh Railways Company, 230 Pa. 366, plaintiff's counsel in his argument to the jury said, inter alia: " 'She is twenty-nine years of age. The life tables use eighty as a basis. She has an expectancy of twenty-five years. Suppose she only makes $600 during the balance of the time. There is something like $18,000 or $20,000 for loss in earning power in the future.' " The Supreme Court held that the trial court should have withdrawn a juror. It

pointed out the fact that there was no proof as to life tables or life expectancy and that there was no evidence to sustain the argument, and added:

"In several recent cases this court has held it to be reversible error for counsel or court to direct the attention of the jury to the amount of damages claimed in the declaration, because such statements are ex parte and may or may not have any substantial foundation in fact. They furnish no proper or legal measure of the damages to be recovered for the injuries suffered."

While the Connelly case, like the Miller case, supra, is stronger than the present one, and while Connelly's counsel recited the life tables and plaintiff's expectancy as facts rather than as an illustration, the real prejudice to defendant is the same in each case, namely that plaintiff's counsel in his argument directed the attention of the jury to a definite sum of money when there was no evidence to support it.

In Bullock v. Chester & Darby Telford Road Co., 270 Pa. 295, plaintiff's counsel undertook to compute to the jury plaintiff's future loss of earnings as $114.40 per year. The court refused to withdraw a juror whereupon the Supreme Court reversed, stating, page 298:

"Then, again, counsel's claim for loss of future earning power remained with the jury and we cannot say it would not augment the verdict, although the trial judge charged the jury there could be no recovery therefor . . . Any statement to the jury by court or counsel, that calls their attention to claims and amounts not supported by the evidence, is error."

In view of the above authorities it is our opinion that the argument of plaintiffs' counsel in the present case wherein he mentioned the definite amount of $1,200 per year as decedent's loss of future earnings and the sum of $14,680.85 as a possible verdict, was

.improper and called for the withdrawal of a juror. The fact that both counsel and the court stated that the sum was mentioned only by way of illustration would not erase from the jury's mind the impression already made.

Counsel for plaintiffs relies upon the cases of Benson v. Altoona & Logan Valley Electric Railway Company, 228 Pa. 290; Reed v. American Dyewood Company, 231 Pa. 431; and Littman v. Bell Telephone Company of Pennsylvania, 315 Pa. 370.

It must be conceded that these cases recognize the right of the *court* to illustrate the principle of personal worth by the use of figures, although the opinion in the Benson case observes that this is a "dangerous practice".

In the Reed case the trial judge in his charge gave an illustration of how the jury might arrive at plaintiff's future earnings and reduce them to their present worth, and used definite figures in the illustration. The Supreme Court held that the charge did not constitute reversible error.

In that case, however, there was evidence that plaintiff was earning $12 per week at the time of his injury and that he was 50 years old.[2] With these figures as a basis the court illustrated one method whereby the jury might compute his possible future earnings and reduce them to their present worth. The trial judge repeatedly explained to the jury that his only purpose was to lead them to adopt a systematic method of calculating present worth by illustrating a type of system. Further, he suggested alternative computations in his illustration.

---

[2] In the present case there was no evidence whatever of decedent's earnings upon which a definite estimate of future continued earnings could be based for use of illustration. There could be no evidence for decedent was still a high school student.

These cases, however, are not authority for the position that *plaintiff's counsel* in oral argument may, under the guise of an illustration, and in the total absence of evidence of the earning of definite sums prior to the accident, suggest specific figures of a possible verdict to the jury in violation of the rule to which we have referred.

Counsel for plaintiff also cites Hill v. Meckley, 38 Dauph. 319. In that case plaintiff's attorney mentioned a specific sum, i. e., $15,000, in his argument as a possible verdict in a hypothetical case, "not this one", and argued that if a jury found that $15,000 was a fair amount of compensation for the injuries sustained, they should bring in a verdict in that amount whether defendant was a millionaire or poverty-stricken. He emphasized that the illustration was only for the purpose of showing that the jury is not concerned about the effect of the verdict upon defendant and asked them not to use it for any other purpose.

The court held that no error had been committed in refusing to withdraw a juror because defendant had not been harmed. While the facts are essentially different from those in the case at bar and possibly the Hill case is distinguishable from the present one, we will say that to the extent that the Hill case authorizes the mention by plaintiff's counsel of a specific amount in illustrating a hypothetical verdict, we do not agree with the decision.

We conclude that a new trial must be granted. It is not necessary, however, that there be a new trial on the question of liability. There was no evidence of decedent's contributory negligence and no question has been raised in the pending motion of the negligence of defendant or of proximate cause. A jury having established liability on the part of defendant, since the only error in the case is the refusal of the trial

judge to withdraw a juror because of the reference in the argument which relates to damages, the new trial to be awarded will be limited to the question of damages.

### *Order*

Now, May 8, 1958, it is ordered that a new trial be granted at which the only issue will be the amount of damages in the survival action and the wrongful death action which plaintiffs have sustained as a result of decedent's death.