## Walbert v. Trexler et al., Appellants.

*Negligence—Master and servant—Evidence—Case for jury.*

In an action by an employee's widow against her husband's employer for the death of her husband, caused by the explosion of a boiler, the case should be submitted to the jury, where at least two witnesses testify that the boiler, whose explosion caused the accident, was in a leaky condition, and that its continuous use in this condition was a source of danger, and should not have been permitted by a prudent man.

In such a case the questions whether the witnesses were really scientific experts to be relied on, whether their reason for considering the use of the boiler imprudent were consistent with each other, and whether either really showed that the explosion was in fair probability caused by the leak, were questions of fact for the determination of the jury.

*Employment—Line of duty—Time and place.*

The explosion was stated by various witnesses to have occurred at some time between six o'clock in the morning and twenty minutes after six. The hours of work began at 6:30 A M. The deceased lived about a mile

away from the works. There was testimony that he was in the habit of using his time, between his arrival and the starting of the work, in oiling and getting ready the machine on which he worked. *Held,* that it was for the jury to say whether the deceased had arrived at the works within a reasonable time, and whether under the circumstances he was under the protection of his employer.

It further appeared that the deceased's post was in a shed, not part of the boiler house where the explosion took place, and that he had just entered the door of the house when he was injured. There was evidence that he was in the habit of sharpening the knife with which he worked as a preliminary to the occupation of the day, and that the oil and whetstone, used for this purpose, were kept in the engine house, the usual entrance to which, before the opening of the works in the morning, was through the doorway in which he was injured. *Held,* that there was evidence from which the jury might infer that he was at that place at that time to get the oil and whetstone, and if so that he was reasonably within the scope of his employment.

*Charge of court—Points.*

It is not error for the trial judge, after correctly stating the law in his general charge, to negative points without reading them to the jury, if the points while correct in law are so expressed that the jury might be misled in their application to the case, unless they were amplified and explained.

Argued March 1, 1893. Appeal, No. 232, Jan. T., 1893, by defendants, Edwin H. Trexler and Oscar Trexler, trading as the Trexler Cooperage Co., from judgment of C. P. Berks Co., Aug. T., 1891, No. 73, on verdict for plaintiff, Martha Walbert. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for death of plaintiff's husband.

At the trial, before ERMENTROUT, P. J., it appeared that defendants were engaged in manufacturing staves, and that their works consisted of a main building, and of an engine house and a boiler house on the south side of the main building. There was also an open shedding extending eastward from the main building, and north from the boiler house. The deceased's place of work was under this shedding. His work was that of a jointer of staves, and his machine was operated with his foot. He had nothing to do with the engine or the boiler. The explosion by which deceased was killed occurred on Nov. 17, 1890, some time after six o'clock in the morning. The time for beginning work at the factory was half past six o'clock, and

until that hour, when the whistle blew, the doors of the main building were kept closed and locked.

It appeared that the boiler had leaked for some weeks before it exploded, and that the defendants had had their attention directed to it. Two witnesses called as experts testified that it was very dangerous to continue using a boiler in a leaky condition, and that a prudent man would not do so.

The circumstances of time and place under which the accident occurred are stated in the opinion of the Supreme Court.

The court charged in part as follows:

" The defendants contend that inasmuch as his work was in the open air under a shed roof back of the main building, that he, Walbert, had no business at this particular time in the boiler room, that he was not then in the employment of the defendants, and that, therefore, inasmuch as the law requires the injury to have been committed in the line of the master's employment, that, even though the jury should find,that there was negligence, there can be no recovery on that ground.

" [ The law is that an employer owes no duty to an outsider, he owes no duty to one who would come to his place at an unreasonable hour. If Walbert had gotten there at 4 o'clock and the accident happened at a quarter after four, we could not say he was there in the line of his employment. If he came there an hour or two before 6 o'clock, and sat around there with people and was injured, he could not then say he was in the line of his employment. The question whether he was in the line of his employment is one for the consideration of the jury, and it will have to pass upon the whole of the evidence in the case. The court have been asked to lay down as a rule that the time shown is beyond the limit, and to say, as a matter of law, that this man was not in the line of his employment at the time when this accident happened. The court declines to say that to this jury. The court declines to enforce any such harsh rule as would require the employee to stand at his peril, either in front of his shop door or in the room of his shop a minute or two, and, if he met with an accident, absolve the employer from liability. The court prefers to leave this question to the jury under the facts in this case.] [4]

" [If, in the course of the ordinary preparation for his work, it was necessary for him to go into the engine and boiler room

to get his oil can and whetstone, and if, as one of the witnesses testified, the habit in carrying out the duties of his employment was to go into the boiler room to get his oil and whetstone, then go out and repair his machine and get ready to start, the court will leave it to the jury to infer whether the duties in going to the engine house and boiler room for the purpose of getting his oil can and whetstone, and making preparation for the oiling of his machinery, were not in the line of his employment. That is a question for the jury to decide.] " [5]

Defendants' points were among others as follows :

" 2. The claim of the plaintiff being that the defendants were negligent in using a boiler which leaked, there can be no recovery, unless the jury are satisfied from the evidence that the use of a leaking boiler was negligence on the part of the defendants, and that the accident was caused by this negligence, and that Charles Walbert, the plaintiff's intestate, was at his post and engaged in the master's service at the time when the accident happened; and if the jury are not satisfied that this alleged negligence of the defendants caused the accident, or if they believe that at the time of the accident Charles Walbert was not in the master's employ and was not at his post, then their duty is to render a verdict for the defendants." Refused. [1]

" 3. The master's liability arises from the fact that he subjects his servant to dangers which in good faith he ought to provide against, but he is not responsible for those dangers to which the servant voluntarily subjects himself, though he does so without carelessness or breach of duty, and, therefore, if the jury believe that Charles Walbert was in the boiler house where the master did not require him to be, or at a time when the master did not require his services, there can be no recovery in this case, and the verdict must be for the defendants." Refused. [2]

" 4. If the jury believe that the accident occurred at a few minutes after six o'clock, and that Charles Walbert was not required or expected by the master to be at his post until 6:30, there can be no recovery in this case." Refused. [3]

" 6. The defendants are not liable for any injuries resulting from the negligence of a fellow servant of Charles Walbert, and, therefore, if the explosion in this case was caused by the

negligence of the engineer or fireman, the plaintiff cannot recover. *Answer.* This point is affirmed as a question of law, but we know of no evidence in this case that would warrant the facts contained in this point." [6]

7. Request for binding instructions. Refused. [7]

Verdict and judgment for plaintiff for $3,685.79.

*Errors assigned* were (1–7) instructions, quoting them.

*Jefferson Snyder, Geo. F. Baer* and *Philip S. Zieber* with him, for appellants, cited: Pollock's Law of Torts, Text Book Series, Blackstone Publishing Co., p. 69 ; Corbin v. American Mills, 27 Conn. 274; Baird v. Pettit, 70 Pa. 477 ; Pittsburgh & Connellsville R. R. v. Sentmeyer, 92 Pa. 280 ; Sprong v. R. R., 60 Barb. 30; Cox v. Syenite Granite Co., 39 Mo. Ap. 424 ; McDaniel v. R. R., 90 Ala. 64 ; Wharton, Neg. 215; Louisville & N. R. Co. v. Orr, Ala., 8 So. R. 360 ; 4 Waite's Actions and Defences, p. 418.

*Christian H. Ruhl, Daniel Ermentrout* and *Howard P. Wanner* with him, for appellee, cited: Koelsch v. Phila. Co., 152 Pa. 355 ; Brunner v. T. & T. Co., 151 Pa. 447; Glossen v. Gehman, 147 Pa. 619 ; Rummell's Admrs. v. Dilworth, 111 Pa. 348 ; Payne v. Reese, 100 Pa. 301; R. R. v. Sentmeyer, 92 Pa. 276 ; Baird v. Pettit, 70 Pa. 477 ; R. R. v. Spicker, 105 Pa. 142 ; Young v. R. R., 115 Pa. 112 ; R. R. v. Sellers, 127 Pa. 406; Huey v. Gahlenbeck, 121 Pa. 238 ; Mixter v. Coal Co., 152 Pa. 395.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893 :

The general principles of law governing the case were clearly and correctly given to the jury, who were told that negligence and not danger was the foundation of the liability of defendants, that the plaintiff must prove negligence and that it was the cause of the injury, and that the injury was received while Walbert was in the line of his duty as an employee of defendants. The appellants' substantial complaint is that the judge did not take the questions from the jury and decide them as matter of law. He could not safely have done so on either point.

The negligence alleged was in continuing to use a leaky boiler. At least two witnesses testified that this was a source of danger, and should not have been done by a prudent man. Whether either of these witnesses was really a scientific expert, whose opinion should be relied on, whether their reasons for considering the use of the boiler imprudent were consistent with each other, and whether either really showed that the explosion was in fair probability caused by the leak, are matters on which we may entertain doubts, but they were questions of fact for the determination of the jury. In the face of this positive testimony, the court could not have assumed that the injury did not result from the alleged cause.

In regard to the other point, what Walbert was doing at the instant he met his death, there were several matters necessary to be considered and settled by the jury. First, the element of time, and secondly of place. It was admitted on both sides that the hours of work began at six thirty A. M. The time of the accident was variously testified to from six six to six twenty. While the appellants' contention that the employer's liability does not begin until the employee's service has actually begun, is in general entirely sound, yet the rule cannot be held absolutely to the stroke of the clock. The deceased lived a mile away from the works. In strict law he was bound to be there when the whistle blew, and he was entitled to a reasonable margin in arriving so as not to be late. There was testimony that he was in the habit of using his time under such circumstances in oiling and getting ready the machine on which he worked. Whether this was work with which he might occupy his employer's time does not appear, but even if it was, the coming a little early and getting to work a short time before he was actually required to, is not usually regarded as a fault in a workman which should deprive him of compensation when injured. The learned judge told the jury that the employer owed no duty to one who came at an unreasonable hour, and if Walbert came an hour or two before his time and sat around with other people, he was not in the line of his duty, but declined to say as matter of law that such was the case here, and left that fact under all the evidence to the jury. In this he was right. Then as to place, it appeared that Walbert's post was in a shed, not part of the boiler house where the ex-

plosion took place, and that he had just entered the door of the house when he was injured.   But there was also evidence that he was in the habit of sharpening the knife with which he worked, as a preliminary to the occupation of the day, and that the oil and whetstone used for this purpose were kept in the engine house, the usual entrance to which, before the opening of the works in the morning, was through the doorway in which he was injured.   There was evidence from which the jury were at liberty to infer that he was at that place at that time to get the oil and whetstone, and if so that he was reasonably within the scope of his employment.

What has been said disposes of the fourth, fifth and seventh assignments of error.   The points in the first, second and third assignments are substantially correct statements of the law, and might have been affirmed.   But they are so expressed that the jury might have been misled in their application to the case, unless they were somewhat amplified and explained.   This the learned judge was under no obligation to do.   Having once correctly stated the law, he was not bound to reiterate it in the words chosen by counsel: Com. v. McManus, 143 Pa. 64.   And he was careful to negative the points without reading them to the jury, so that no confusion could have arisen in their minds between the law given to them affimatively in the charge, and that which, though apparently the same, was refused.

The point in the sixth assignment was affirmed as matter of law, but the judge added that he knew of no evidence that would warrant the facts stated in it.   No such evidence was pointed out to the court below or to us.   What was said in the argument is an inference only.   The court was not bound to submit that to the jury.

Judgment affirmed.