## JOHN McLAUGHLIN v. CLOQUET TIE & POST COMPANY.[1]

November 29, 1912.

Nos. 17,834—(100).

**Negligence — questions for jury.**

The defendant intrusted to its employees the work of driving lumber products down a stream and through the land of the plaintiff. The work, during its progress, was interfered with by a stump in the stream at a point near the plaintiff's house. The foreman and a driver, another employee, then went into the stream and sawed out the obstruction and in doing so both were wet. The driver, upon reaching the shore, built a fire on the bank of the

[1] Reported in 138 N. W. 434.

stream on plaintiff's land for the purpose of drying his clothes. He negligently failed to put the fire out, whereby the plaintiff sustained damages.

*Held,* upon a consideration of the whole evidence, that the question whether the act of the driver in setting the fire was in the course of and within the scope of his employment, was one of fact for the jury, and that the court did not err in refusing to direct a verdict for the defendant.

Action in the district court for St. Louis county to recover $1,305 for the destruction of certain pulp-wood, fencing and standing timber. The case was tried before Cant, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $740. Defendant's motion for judgment notwithstanding the verdict was denied and its motion for a new trial was granted, unless plaintiff consented to a reduction of the verdict to $500. From the judgment, entered after such consent had been given, defendant appealed. Affirmed.

*William B. Phelps,* for appellant.

*John F. Wilkie* and *Alexander Marshall,* for respondent.

START, C. J.

This action was brought in the district court of the county of St. Louis to recover damages in the sum of $1,000, alleged to have been sustained by the plaintiff by the negligence of the defendant, by its employee, in negligently starting and leaving a fire which burnt and destroyed certain pulp-wood, poles, and standing timber on the plaintiff's land. The defense was in effect a denial of the allegations of the complaint. A verdict was returned for the plaintiff for $740. The defendant made an alternative motion for judgment in its favor notwithstanding the verdict, or a new trial in case the motion for judgment should be denied, and assigned four separate errors in support of the motion for a new trial. The court made its order denying the motion for judgment and granting the motion for a new trial, unless the plaintiff consented to a reduction of the verdict to $500. He consented, and judgment was entered upon the verdict as reduced, from which the defendant appealed, and here assigns that the court erred as follows:

"1. In refusing to direct a verdict in favor of the defendant.

"2. In refusing to give the fifth instruction requested by defendant.

"3. In refusing to order judgment in favor of defendant notwithstanding the verdict.

"4. In refusing to grant defendant a new trial of this action."

The last assignment of error is too general to present any questions for our consideration, as the motion for a new trial was made on more than one ground.  1 Dunnell, Minn. Dig. § 363.

The other assignments of error raise the question whether, upon the whole record, the trial court erred in not instructing the jury to return a verdict for the defendant and in not ordering judgment in its favor notwithstanding the verdict.  In making this statement we have not overlooked the second assignment of error, which is based on the refusal of the court to instruct the jury that: "If you find that the driver who started this fire, as claimed by the plaintiff, built the fire to dry his clothing, your verdict will be for the defendant."  It was not error to refuse this request, unless the defendant was entitled to an instructed verdict, for the jury was specifically instructed that, to entitle the plaintiff to recover it was not sufficient that the fire was set by defendant's employee, but that they must be satisfied that the fire was set by the employee in the line of his employment and in the scope of his agency, and not for a purpose personal to himself.

This leaves for our consideration the question:  Was the defendant, upon the whole evidence, entitled to a directed verdict in its favor?  The evidence relevant to this question tends to prove the following facts:

The plaintiff is the owner of the land described in his complaint, through which runs a natural stream.  He was in possession of the land in 1909 upon which there were then standing timber and several piles of pulp-wood and poles, some of them near the bank of the stream.  The defendant, during the summer of 1909, was engaged in driving lumber products down the stream and through the land of the plaintiff.  It entrusted the execution of this work to its

employees. The driving operations incident to such work were interfered with by a stump in the stream at a point near the plaintiff's house. The plaintiff at this time was absent from his land, but it was in charge of his nephew, Ray McLaughlin, of whom the defendant's foreman, in charge of the work, borrowed a saw with which to cut out the obstruction in the stream. The foreman, and another employee of the defendant, a driver, then waded into the stream and sawed out the obstruction, and in doing so both were more or less wet. They then went ashore and the foreman started down stream, but the driver said to McLaughlin: "I will have to build a fire to dry my clothes;" to which McLaughlin made no reply and started toward the house, when the driver called to him that he had forgotten the saw. He then turned around to get the saw and noticed that the driver had started a fire, but said nothing about it as he thought the driver would put it out. He then went to the house; and some twenty minutes thereafter he heard a roar and discovered that the fire had not been put out but had spread and was beyond control. The fire so started by the driver and negligently left burning destroyed the plaintiff's pulp-wood and fence poles and injured to some extent his standing timber.

The controlling question upon the record is whether the trial court erred in not directing a verdict for the defendant on the ground that, as a matter of fact, the setting of the fire by the driver was not done in the course of and within the scope of his employment; or, in other words, whether as a matter of law there was no evidence fairly tending to show that his act was so done. The settled rule of this court, stated abstractly, is to the effect that a master is only liable for the wrongful act of his servant when it is done in the course of and within the scope of his employment. The application of the rule is shown in the cases following: Morier v. St. Paul, M. & M. Ry. Co. 31 Minn. 351, 17 N. W. 952; Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959; Smith v. Munch, 65 Minn. 256, 68 N. W. 19; Slater v. Advance Thresher Co. 97 Minn. 305, 107 N. W. 133; Barrett v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047; Kwiechen v. Holmes & Hallowell Co. 106 Minn. 148, 156,

118 N. W. 668; Penas v. Chicago, M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926.

While the abstract rule is well settled, some confusion has arisen in applying it concretely, especially with reference to the meaning of the term "the course of and within the scope of his employment." No hard and fast definition of the term, applicable to all cases, can be given. Some of the earlier cases in this court seemingly applied the rule with literal exactness, but the tendency of the later cases is to give the rule a more liberal and practical application, especially in cases where the business of the master intrusted to his servants involved a duty owed by him to the public or third persons. See in this connection the exhaustive opinion of Justice Jaggard in Penas v. Chicago, M. & St. P. Ry. Co. supra.

The defendant relies upon the Morier case as conclusively controlling the instant case. The facts in the Morier case were, that the employees of the defendant were engaged in repairing its railroad track and were charged with no duty outside of it. They usually went to their boarding house for their dinners, but on the day in question they brought their dinners with them, and at noon left their work, went upon the right of way and built the fire, which destroyed plaintiff's property, for the purpose of warming their coffee. These special facts distinguish that case from the one at bar. In this case the execution of the work intrusted by the defendant to its employees required them to pass over the plaintiff's land along the banks of the stream, and the defendant owed to the plaintiff the duty of exercising due care to prevent injury to the plaintiff's land in the course of the work assigned to its employees. The building of the fire by the driver to dry his clothes was not, as a matter of law, a departure from the course of his employment, for it was incidently connected therewith, and was made necessary by his going into the stream to remove the obstruction, which was a part of the work assigned to him.

Upon a consideration of the entire record, we have reached the conclusion that the question, whether the driver set the fire in the course of and within the scope of his authority, was one of fact to be decided by the jury under proper instructions. We accordingly

hold that the trial court did not err in denying defendant's motion for an instructed verdict in its favor or its motion for judgment. The evidence does not leave the question of the defendant's liability a mere matter of speculation; nor does it show that the plaintiff is estopped from asserting any claim against the defendant by reason of anything that his agent in charge of the premises said or failed to say or do.

Judgment affirmed.