# Lyons, Appellant, *v.* Peoples Savings Bank.

*Negligence—Master and servant—Elevators—Negligent operation—Fellow servant rule—Nonsuit.*

1. Where an employee is on the premises of his employer the relation of master and servant commences a reasonable time before the actual beginning of the work and continues a reasonable time after the work is over.

2. Where a workman reached his place of employment five or ten minutes before he was actually to begin work, and while being transported in an elevator to the dressing room on an upper floor was injured in consequence of the negligence of the operator of the elevator, the relation of master and servant existed at the time of the injury; the operator of the car was a fellow servant with such workman and in an action against the master for the injuries sustained, a compulsory nonsuit was properly entered.

Argued Oct. 14, 1915. Appeal, No. 135, Oct. T., 1915, by plaintiff, from final order of C. P. Allegheny Co., Jan. T., 1913, No. 104, refusing to take off compulsory nonsuit in case of James H. Lyons v. Peoples Savings Bank. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before O'CONNER, J., specially presiding.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit, which the court subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Samuel S. Mehard,* with him *George P. Kountz,* for appellant.

*W. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for appellee.

OPINION BY MR. JUSTICE FRAZER, January 3, 1916:

Plaintiff, an employee of defendant as night operator of a passenger elevator in an office building owned by defendant, was required to be ready for work at six o'clock each evening, and was engaged from that time until 6:30 the following morning. On the evening when the injuries for which he claims damages were sustained plaintiff entered the building five or ten minutes

before six o'clock, and stepped into the car operated by the man whom he was to relieve, to be taken to the employees' dressing room on the sixteenth floor. When the car stopped at the fourteenth floor to permit a passenger to leave, plaintiff informed the operator that he also would get off at that floor, and had stepped from the elevator to the floor of the building with one foot, when the operator suddenly and without warning started the car, throwing plaintiff to the floor and injuring him quite seriously by catching him between the moving car and the frame of the door. At the close of plaintiff's testimony the trial judge directed a nonsuit, on the ground that the operator of the car, whose negligence caused the accident, was a fellow servant with plaintiff, consequently defendant was not liable. A motion to take off the nonsuit was subsequently refused by the court, and from the judgment entered we have this appeal.

Plaintiff testified that while the day operators of the elevators were uniformed, he was not, except that he wore a cap while at work, which he kept in the employees' dressing room on the sixteenth floor when not in use, and that he relieved the day operator at the fifteenth floor instead of the first. Although plaintiff had not reached the place where he was actually to begin work and had not started to make preparation for so doing, he was on defendant's premises for that purpose and had but a few minutes to spare before required to relieve the day operator and begin his duties. The question whether or not plaintiff and the operator in charge of the car were fellow servants depends upon whether the relation of master and servant between plaintiff and defendant existed at the time the accident happened.

The general rule is that the relation of master and servant continues so long as the latter is either actually or constructively in the employ of the former and under his control. In the case of a workman who begins his labors at a certain hour in the morning and continues for

a specified number of hours per day, there is necessarily a time when he is on the premises of the master in going to and returning from his work, preparing for beginning or leaving, washing his hands, disposing of tools, changing his clothing, etc. All these requirements are incident to the employment, and it is therefore held that the relation of master and servant continues from a reasonable time before the actual beginning of work until a reasonable time subsequent thereto (26 Cyc. 1086). This rule has been well stated by the Federal Court in Willmarth, et al., v. Cardoza, 176 Fed. Repr. 1, where plaintiff, a hod-carrier, remained a few minutes after the hour for quitting work, and on going to a shed to secure his coat found the door locked, which obliged him to call at the office for a key, and while returning to the shed from the office was injured by an explosion. In holding that the relation of master and servant still existed, it was said (p. 3) : "Is it to be supposed that implied contract and undertaking end suddenly at a fixed minute, while the servant is still surrounded by the conditions and risks of his employment, or that they continue until the servant has ceased to be affected by these conditions and risks? We think the latter conclusion is obviously correct. To adopt the former, whether in favor of the master or of the servant, would deprive the rule of its reason. In the case at bar plaintiff, indeed, did not dispute that his employment would have continued until he reached the highway, provided that he walked directly there from the building. This concession is decisive of the case at bar. If the employment covers, not only the time during which the workman is engaged in his ordinary labor, but also a later time, during which he is passing from the surroundings of his employment into surroundings unrelated thereto, then this additional period will evidently be longer or shorter, according to the circumstances. The situation and nature of the building may affect the time needed for leaving it. The tools which the workman uses may be more or less

complicated and numerous. They may be easy or hard
to put away for the night. That the workman may have
to lay aside some of his clothes while working is plain.
This may well be both for his employer's benefit and his
own, like the travel in Kilduff v. Boston El. Ry. Co., 195
Mass. 307, 308, 81 N. E. 191, 9 L. R. A. (N. S.) 873. That
a proper place should be provided by the employer where-
in to keep the clothes temporarily is reasonable, and that
this place cannot always be in direct line between the
place of work and the gate of the premises is obvious.
If the door of the receptacle is locked—perhaps for the
safety of the employee's property—or if it sticks, or if
some time is otherwise spent by the workman in looking
for his clothes, this also is an incident of his employ-
ment, and the employment ordinarily continues during
the operation. The distinction between employment
and nonemployment is the same, whether it works in
favor of the master or of the servant. In the case at
bar the plaintiff is contending that his employment
ceased before the accident; but in the next case the em-
ployee may be driven to maintain that his employment
is prolonged to his final departure from the premises."

The language above quoted applies directly to the case
before us. Plaintiff reached his place of employment
five or ten minutes before he was actually required to
begin work. Certainly this cannot be such an unrea-
sonable length of time as would require the question
whether he was pursuing business of his own, or prepar-
ing to engage in that for which he was employed, to be
submitted to the jury. His transportation by means of
the elevator to the sixteenth floor was not a part of the
compensation for his employment which would entitle
him to be treated as a passenger, under the cases of
O'Donnell v. Allegheny Val. R. R. Co., 59 Pa. 239; Mc-
Nulty v. Penna. R. R. Co., 182 Pa. 479, and Goehring v.
Beaver Val. Traction Co., 222 Pa. 600, relied upon by
appellant; but a use merely permissive and incidental
to his employment and the most convenient method of

reaching the dressing room on the sixteenth floor, and the fifteenth floor, where he customarily took charge of his car. The difference between the two classes is clearly pointed out in Dugan v. Susquehanna Coal Co., 241 Pa. 565, where it is said, on page 569, "The distinction between those cases and the one under consideration is that it did not appear that there was any contract to transport plaintiff as part of the compensation for his services. The furnishing of transportation to the workmen was, in so far as the evidence disclosed, gratuitous on the part of the defendant company. The plaintiff is therefore to be regarded merely as an employee with the privilege, as part of his business, of riding to and from his work in the empty cars provided for that purpose."

The judgment is affirmed.