Donald L. **BROWN**, Plaintiff-Appellant,

v.

Thomas **ANZALONE**, Defendant-Appellee.

No. 13594.

United States Court of Appeals
Third Circuit.

Argued Oct. 30, 1961.

Decided Feb. 16, 1962.

Will J. Schaaf, Erie, Pa., for appellant.

John E. Britton, Erie, Pa. (Gifford, Graham, MacDonald & Illig, Erie, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this personal injury action the judgment in favor of the plaintiff was vacated and judgment n. o. v. entered for the defendant. Plaintiff appeals.

On December 27, 1957, defendant Anzalone was engaged in logging operations in the Spartansburg, Pennsylvania area. Walter Anderson was employed by him to skid logs from Anzalone's property to a public highway abutting same on the south. Anderson, according to his employment contract with Anzalone, furnished his own truck and provided his own fuel and repairs. He was paid $10 per thousand feet of logs skidded. Plaintiff and his brother had an agreement with Anzalone to clear his land in exchange for the "tops" of the cut trees. There is no claim in the suit that Ander-

son was an independent contractor. To the contrary he was admittedly an employee as above outlined and the case was tried on that basis.

On December 26, 1957, Anderson's truck broke down on the logging site. When Anderson arrived there the next morning he commenced repairing the truck in order to continue his skidding of the logs. The temperature at that time in the Anzalone woods was below freezing; snow was on the ground. About 10:00 A.M. while Anderson was engaged with his truck repairs, plaintiff came along looking for his brother. Anderson wanted to warm himself and he with plaintiff gathered some wood for a fire. To make the fire burn better Anderson poured some diesel fuel on it. The fuel exploded, enveloped plaintiff's trousers and severely burned his legs. The diesel oil had been purchased by Anderson for use in moving Anzalone's disabled caterpillar vehicle which was in the way of the skidding work.

Brown sued Anzalone alleging that his negligence, through Anzalone's employee Anderson, had caused his burns. Anzalone defended, saying that Anderson acted without the scope of his employment and that Brown was contributorily negligent. This is a diversity action and Pennsylvania substantive law governs. The case went to the jury on both the questions. There was a verdict in favor of the plaintiff. The defense moved to set the verdict aside on the stated grounds. The court granted the motion for the sole reason that Anderson in building the fire was not within the scope of his employment with Anzalone.

■ There are two Pennsylvania Supreme Court decisions which make it very clear that an employee need not be actually working at his designated job in order to be within the scope of his employment. In Walbert v. Trexler, 156 Pa. 112, 27 A. 65 (1893), defendants were manufacturers. They had a boiler house on the side of their main building. Plaintiff's decedent had been employed as a "joiner of staves". He worked outside, but not far from, the boiler room. He

normally started at 6:30 A.M.; he arrived on the particular day sometime after 6:00 A.M. but before 6:30. Prior to the latter time the boiler in the boiler room exploded. Decedent was then in the room and was killed. There was evidence that he was in the habit of arriving at work a little early to get his machine ready to operate; evidence that he was in the habit of sharpening the knife with which he worked at that time and that the oil and whetstone used for sharpening the knife were kept in the boiler room. The Supreme Court held that it was reasonable for a jury to infer that decedent was in the boiler room at the time of the explosion, within the scope of his employment; that the trial judge correctly refused to take the issue from the jury and rule as a matter of law; that it was a jury question whether decedent had arrived at an unreasonable hour.

In Lyons v. Peoples' Savings Bank, 251 Pa. 569, 97 A. 68 (1916), plaintiff was employed by defendant as a night operator of a passenger elevator in defendant's office building. He worked from 6:00 P.M. until 6:30 A.M. On the evening when he was injured, he entered the building five or ten minutes before 6:00 P.M. He stepped into the elevator (operated by the man he was to relieve) to be taken up to the employees' dressing room on the sixteenth floor of the building. The car had to stop on the fourteenth floor to permit another passenger to leave and plaintiff informed the operator that he would alight at that floor. As he was so doing, the operator started the car moving, throwing plaintiff to the floor while the frame of the door still held him. The trial judge nonsuited plaintiff deciding that the elevator operator was a fellow servant and conversely that plaintiff was a servant himself at the time he was injured.

The Supreme Court affirmed saying: "The general rule is that the relation of master and servant continues so long as the latter is either actually or constructively in the employ of the former and under his control. In the case of a workman who begins his labors at a cer-

tain hour in the morning and continues for a specified number of hours per day, there is necessarily a time when he is on the premises of the master in going to and return from his work, preparing for beginning or leaving, washing his hands, disposing of tools, changing his clothes, etc. All these requirements are incident to the employment, and it is therefore held that the relation of master and servant continues from a reasonable time before the actual beginning of work until a reasonable time subsequent thereto * * *." Id. at 571–572, 97 A. at 69.

Green v. Hiestand Bros., 103 Pa.Super. 515, 157 A. 44 (1931) also assists materially to indicate the Pennsylvania law on the problem. The facts in that litigation were that Green had been a salesman for the defendants; he received a ten dollar weekly expense allowance (including the operation of his car) plus commissions on his sales; he was required to use his own car. One day after completing his morning calls his automobile was not working properly so he drove it to his garage to fix it as he had afternoon calls to make. While working on the car, he was overcome by carbon monoxide gas and died. His widow's claim in compensation against the employer was upheld. The basis of the finding was that Green had been obliged to use his own car and at the time of repairing it he was in the course of his employment and furthering the affairs of his employer. Common Pleas affirmed. C.P., Philadelphia County, March T., 1931, No. 3802. On appeal to the Superior Court it was held that Green's employment had not terminated at the time he was repairing his automobile. The court said, p. 518, 157 A. p. 45, that he was at the time " * * * actually engaged in the furtherance of the then uncompleted business or affairs of his employers * * *." In Stevens v. C. B. Parker Co., 108 Pa. Super. 520, 165 A. 665 (1933), though the decision on the facts is against the accident arising out of the course of the employment, the Green doctrine is recognized as valid. Morris v. General Refining Co., 25 Pa.Dist. & Co.R. 321 (Com.

Pl.1936) upholds the same principle regarding a mechanic employed by defendant to repair its equipment at scattered stations, to work only when and where required, subject to calls at any time but without any definite hours. He used his automobile and received weekly compensation plus an allowance for expenses. While making a stop at a station he discovered he had a broken spring in his car. He proceeded to the next station which had better repair facilities and where he was injured while fixing the spring. He had intended the next morning to go to a third company station where he had some work to do. He was found to have been injured within the course of his employment. And see Spry v. Polt, 186 Pa.Super. 326, 142 A.2d 484 (1958).

■ The last four decisions arise under the Pennsylvania Compensation Act but there is nothing to the contrary that we have discovered in Pennsylvania either under said Act or at common law.[1] Green v. Hiestand has never been questioned. That opinion, together with Walbert and Lyons, seems to us to make it a jury question under the probable Pennsylvania law as to whether Anderson acted in the course of his employment—unless the additional element of Anderson starting the fire forces a contrary conclusion.

Anderson, repairing his truck outdoors in subzero temperature, sought to warm himself. His method of getting his fire going caused Brown's burns. Our research has not disclosed any Pennsylvania reported decision which deals with similar circumstances. Having in mind the Pennsylvania Herr opinion (supra), citing with approval the early Minnesota Morier decision (supra), perhaps the closest tie available to Pennsylvania is the present Minnesota law as exemplified in McLaughlin v. Cloquet Tie & Post Company (supra), which under factual conditions reasonably comparable to those before us holds that " * * * the building of a fire * * * was not, as a matter of law, a departure from the course of his employment, for it was incidentally connected therewith * * *." In that litigation the fire was made necessary because the employee and his clothes had become soaked while he was trying to remove an obstruction to the work. Anderson's fire was necessary in order to help him continue and complete the truck repairs so that in turn he could carry on with his job for his employer. Since he

---

[1]. The Pennsylvania decisions submitted by appellee are of little help. Herr v. Simplex Paper Box Corporation, 330 Pa. 129, 198 A. 309 (1938) concerned the lighting of a cigarette by an employee "for his own enjoyment and satisfaction." Appellee calls attention to that opinion citing with approval, Morier v. St. Paul M. & M. Ry. Co., 31 Minn. 351, 17 N.W. 952 (1884). There the fire was started during lunch time for the purpose of heating the employees' coffee. In a later Minnesota case, McLaughlin v. Cloquet Tie & Post Company, 119 Minn. 454, 138 N.W. 434, 49 A.L.R.,N.S., 544 (1912), employees driving logs down stream got their clothes soaked. They made a fire to dry themselves and their clothes. The court held, "The building of a fire by the driver to dry his clothes was not, as a matter of law, a departure from the course of his employment, for it was incidentally connected therewith, and was made necessary by his going into the stream to remove the obstruction, which was part of the work assigned to him."

138 N.W. at 436. The court therefore decided that whether the starting of the fire was within the scope of the employment was for the jury. Chikowska v. Prado Garage, Inc., 349 Pa. 508, 37 A. 2d 533 (1944) deals with a garage employee who was told to drive a customer's car from its parking place in front of the customer's home to the garage in the rear. Instead the employee deviated from his course by about seven blocks, went to his own house, picked up some rubbers and gloves (which he would wear if called upon later to wash cars) and then was involved in an accident. The court held that the garage and its employee "had the car for delivery to the garage for storage—and that was all." Id. at 510, 37 A.2d at 534. Appellee also seeks support from Borzik v. Miller, 399 Pa. 293, 159 A.2d 741 (1960) where a salesman hired to sell cars took his girl friend along with him on trips to see prospective customers. The court quite rightly concluded this was not in the course of his employment.

was making the repairs out in the open woods with the weather below freezing he needed to warm himself. Perhaps thaw himself out would have been not only more dramatic but more accurate. However, Anderson's language as it stands conveys a clear enough picture of a valid incidental connection—his repairing the truck under the admitted conditions and needing a fire to warm himself while he was working.

There is evidence in the record that defendant's employees often built fires during working hours as well as during their lunch periods. Defendant did not deny this. He merely said that he never saw them build fires except during lunch time; he added that he was not around much during their working hours. He also testified that he saw nothing improper in the practice. There is no evidence that he told his employees not to build fires. A warm employee is more efficient than one who is freezing. Under the facts before us the jury might have considered Anderson's act evidential in connection with the furtherance of his employer's business. Hancock v. Aiken Mills, 180 S.C. 93, 185 S.E. 188 (1936) was such a case where bricklayers, preparing to work on a chimney, built a fire to warm themselves on a freezing morning. A young boy was burnt when he ventured too near the flames. The court said it was a jury question whether the building of the fire was within the scope of the bricklayers' employment; that it could not be ruled not within that scope as a matter of law. In that suit there was evidence, as in this appeal, that the building of fires was a customary act of the bricklayers. Restatement, Agency (First and Second) Section 229 includes within its list of important factors to consider in determining scope of employment: "Whether or not the act done is one commonly done by such servants", and "whether or not the master has reason to expect that such an act will be done." See also Speas v. Boone County, 119 Neb. 58, 227 N.W. 87,

318 (Sup.Ct.1929); Kingsley v. Donovan, 169 App.Div. 828, 155 N.Y.S. 801 (1915); MacKay v. Department of Labor and Industries, 181 Wash. 702, 44 P.2d 793 (1935); Fels v. Industrial Commission, 269 Wis. 294, 69 N.W.2d 225 (1955).

In Shell Oil Co. v. Prestidge, 249 F.2d 413 (9 Cir. 1957), there was " * * * a fire which the crew had started for the purpose of warming themselves before commencing work." (p. 414). Plaintiff, on the premises seeking employment, joined the crew at the fire. While plaintiff was there (p. 414) " * * * one of the drilling crew poured diesel oil on the fire to make it burn better." This resulted in fire being splashed on plaintiff, burning him. There were two trials with verdicts for the plaintiff both times. The validity of submitting to the jury the question of whether lighting the fire and using the diesel oil was within the scope of the employment of the employee responsible was never disputed either on motion for new trial or in the above appeal. The latter was solely concerned with appellant's contention that it was not responsible for the oil dredging. The judgment in favor of the plaintiff was affirmed.

We are satisfied that there was sufficient evidence in plaintiff's proofs to make a factual issue for the jury's decision whether Anderson's attempt to warm himself by having a fire was part of his truck repair operation and thus incidentally connected with his log skidding use of the truck for his employer. It follows that the court in the first instance quite properly left to the jury the question of whether Anderson in lighting the fire was acting within the scope of his employment. The jury found that he was, that he was guilty of proximate negligence and that Brown was not contributorily negligent.

The judgment of the district court will therefore be reversed and the case remanded for the purpose of reinstating the original judgment in favor of the plaintiff and against the defendant.